DE LORIEA et al. v. WHITNEY.

(Circuit Court of Appeals, First Circuit. June 22, 1894.)

No. 88.

1. PATENTS—ACTIONS FOR INFRINGEMENT—DIRECTING VERDICT.
   When, in an action at law, the essence of an alleged infringing machine is not in dispute, so that the question of infringement by it turns plainly on the construction of the patent alleged to be infringed, and such construction is for the determination of the court, either on the face of the patent, or on its face in connection with facts of such nature that their existence and effect cannot be reasonably disputed, the entire issue of infringement is practically for the court. In regard to these particulars, the same rules of construction apply as apply to other instruments.

2. SAME.
   Royer v. Belting Co., 10 Sup. Ct. 833, 135 U. S. 319, touching what issues are for the jury, explained.

3. SAME—EVIDENCE—CONSTRUCTION OF PATENT.
   The facts that a patented machine was the first successful one, and that it had great commercial success, are limited in their application to questions of utility or patentable invention, and have no pertinency in cases turning on the construction of the patent.

4. SAME — LIMITATION OF CLAIMS — MACHINES FOR UNHAIRING AND SCOURING HIDES.
   The McDonald patent, No. 210,797, for a machine for unhairing and scouring hides and skins, must be limited to a machine containing two feed rolls and a supporting roll and a scouring roll; is not entitled to a broad range of equivalents, but falls within Fay v. Cordesman, 3 Sup. Ct. 236, 109 U. S. 408, and cases of that class; and is not infringed by a machine which contains three rolls, the lower acting as a combined feed roll and supporting roll.

In Error to the Circuit Court of the United States for the District of Massachusetts.

This was an action by Joseph F. De Loriea and Griffin Place, executors of James W. McDonald, against Arthur E. Whitney, for damages for infringement of letters patent No. 210,797, issued December 10, 1878, for a machine for unhairing and scouring hides and skins. On trial in the circuit court the judge instructed the jury to find for defendant. Judgment for defendant was entered on the verdict. Plaintiffs brought error.

The ruling in the circuit court was as follows (COLT, Circuit Judge):

The evidence being closed in this case, and the requests for rulings having been presented by the counsel upon both sides, I am prepared now to state the conclusions that I have reached with respect to the construction of the McDonald patent in suit, which has an important bearing upon the case.

I am of opinion that the McDonald invention described in claims 1 and 2 of his patent of December 10, 1878, must be limited to a machine containing two feed rolls, a supporting roll, and a scouring roll, and that a machine which contains three rolls, the lower roll acting as a combined feed roll and a supporting roll, is not within the patent.

The specification refers to the prior Roberts patent, of November 7, 1876, which was for a four-roll machine, and the prior McDonald patent, which was also for a four-roll machine, and it declares that the invention is for an improvement on the last-named device. The patentee, after referring to three other prior patents in his specification, and pointing out why they do not contain his invention, describes what he says "constitutes the spirit of my invention" as follows: "Two feed rolls for feeding a hide or skin to a scouring roll, so arranged in relation to each other and to the scouring roll that one of said rolls may be lifted from the other and held apart while a hide which has been improperly fed is drawn back by the operator before it has passed the scouring roll to be properly fed to the said scouring roll." The spirit of the McDonald invention, and the substantial improvement which he believed he had accomplished by his invention, was the separation of the two feed rolls, whereby a hide which had been improperly fed could be drawn back by the operator. He was dealing with a four-roll machine of the Roberts type. He had already patented one improvement on that type of machine. He now saw still another defect in the machine, and the way to remedy it. The defect was that in both the Roberts machine and his prior machine the feed rolls could not be separated. Both these machines provided for the separation of the supporting roll and scouring roll by the movement of the treadle, but no means were provided for the separation of the feed rolls by the same movement. To McDonald's mind the separation of the supporting roll and scouring roll was old with Roberts and himself, while the separation of the feed rolls was a new conception originating with him; and he considered this an important improvement on the prior machines, because by this means the operator was enabled to withdraw the hide when improperly fed. This was the principal contribution to the art which McDonald believed he had made by the patent in suit. This is clearly shown by the file wrapper and contents, which was not before the court in either of the two prior cases where this patent was under consideration.

In the original application the first claim of the patent was as follows: "In machines for unhairing and scouring skins and hides, the feed roll, D, in combination with the treadle, F, and suitable connecting mechanism, whereby the rolls may be separated and held apart, substantially as described, and for the purposes set forth." The examiner held that this claim was anticipated by the Coogan patent, of October 10, 1871; the Roberts patent, of November 7, 1876; the Larrabee patent, of July 24, 1877. He also said: "It is proper to add that it is common, in leather-working machines, to provide vertical adjustment to rolls or cylinders by means of levers and their intermediate devices."

To this the applicant replied, October 22, 1878, through his authorized attorney, T. W. Clarke, that the Coogan patent did not describe feeding rolls which could operate to feed a hide; that, while Roberts describes a pressure roll which can be moved with respect to the scouring roll, the adjustment is not applied to the feed roll, and no adjustment is shown for the purpose of holding one roll from another in order that an improperly fed skin may be withdrawn for the purpose of again properly presenting it to the feeding rolls; that the Larrabee machine shows but one feed roll; that the drum described in the Larrabee patent as a work-supporting cylinder has a movement in relation to the scouring roll, but none in relation to the feed roll; that the movement in relation to the scouring roll, is for the purpose of feeding the pressure of the roll upon the hide; and that there is no provision by which the hide can be

withdrawn after it has once commenced to feed. The first claim was therefore withdrawn, and the following substituted: "(1) In machines for unhairing and scouring skins and hides, in which two feed rolls are employed in feeding the hide or skin to the scouring roll, D, provided with a vertical movement in relation to the feed roll, D', by means of the treadle, F, and suitable connecting mechanism with said feed roll, D, whereby the said rolls may be separated and held apart, substantially as described, and for the purposes set forth."

Mr. Clarke further says in this same communication: "The applicant is aware that it is common, in leather-working machines, to provide vertical adjustments to rolls or cylinders by means of levers and their intermediate connections; but he is not aware that these adjustments have been made in machines for unhairing, working out, and scouring skins and hides for the purpose of enabling a workman to withdraw a skin or hide that has become wrinkled or folded upon itself in the feeding, so that by supporting the feed roll, and by moving the supporting roll from the scouring roll, the skin may be drawn back by the operative, and again fed, without the necessity of feeding the same through the machine, stopping the machine, removing it from the pile on the other side to again feed it to the feed rolls, which it is necessary to do with the machines now in use." That is, the principal idea that lay in McDonald's mind was to have the two feed rolls separate in a four-roll machine, and you will observe that in these communications with the patent office that idea is pressed upon the examiner as the leading and principal improvement in his patent. In the prior Roberts machine there existed only the separation of the work roll and the supporting roll. In the prior McDonald patent that same feature is found. Now, McDonald said it is necessary to separate the feed rolls in order that the operator may be able to withdraw a hide which is improperly presented; to remedy, in other words, the defect of permitting the hide to pass entirely through the machine, fall upon the other side, and then to be taken up and presented to the machine again.

The applicant, through Mr. Clarke, still further follows up and enforces this view of his patent in his dealings or correspondence with the patent office. Under date of October 28, 1878, the examiner, in reply to the last communication from the applicant's attorney, uses this language: "It is not unusual to provide two feed rolls in a leather-working machine, and the employment of levers and springs as means for adjustment has been shown to be old." At that date, therefore, the amended claim—the first claim of the application—stood rejected.

To that communication from the examiner, Mr. Clarke replies, under date of November 11, 1878, in part, as follows: "In presenting a hide or skin to feeding rolls, the same is liable to become folded upon itself, if not properly fed; and, if a hide is so fed that it shall be presented in a folded or wrinkled state to the unhairing or scouring roll, it, of course, will be imperfectly dehaired or scoured. In all the inventions heretofore employed for unhairing and scouring, no provision has been made for withdrawing the hide or skin from between the feeding rolls before it is operated upon by the scouring roll; and consequently every hide or skin that was not fed in a perfectly flat condition, so that no wrinkles or folds could occur therein, had to pass entirely through the machine, imperfectly scoured or unhaired, and required to be again passed through the machine, in a perfectly flat condition, in order to perfectly free it from hair, or work it. Thus, in imperfectly unhairing and scouring one hide, there was consumed time enough for perfectly scouring two hides. If, however, the hide could have been withdrawn before it reached the scouring roll, by separating and holding apart the feed roll, the time would have been saved. Mr. McDonald has discovered that it is possible to save this time, and he effects it in a way which seems very simple after he had accomplished it, but nevertheless was entirely unknown and unpracticed before he conceived it; that idea being the separation of the feed rolls. The conception of the separation of the working roll and the scouring roll was old. He accomplishes it by so supporting and actuating one of the feed rolls that it can not only be lifted by the movement of the lever, but it can be held apart sufficiently long to withdrawn the hide if improperly presented. Mr. McDonald was as well aware that rolls had been given movements or adjustments in relation to other rolls, in certain classes of machines, as he was that the feeding rolls of an unhairing machine had never been organized to accomplish

the result that he accomplishes. His invention consists, not in moving one roll from another,—for the same is very old, not only in leather-working machines, but in a great variety of devices where it is desirable to increase or lessen the space between rolls,—but it does consist in moving one roll for another at a certain time for a certain purpose, and in a certain machine; and there is as much invention in moving a roll at a certain time for a certain given purpose as there is in discovering that one roll may be separated from the other for the purposes of any desirable and new adjustment. Mr. McDonald's invention does not depend upon the means for separating the rolls alone, but it further depends upon the time when said separation is to be employed; and Mr. McDonald, so far as the references show, is the first man who has arranged two feed rolls so that one of them may be lifted and held at a certain specified time to accomplish a certain specified result."

The letter then considers more in detail the three references to which the patent office referred the applicant in the first communication which was made to him. The letter further says, "I am so firm in my conviction that neither of the three references cited meet the invention of Mr. McDonald that I will incorporate the following amendment in the specification."

He then proceeds to incorporate into the specification the amendment which remains now as a part of the patent. That amendment points out and describes the Coogan machine, the Roberts machine, and the Larrabee machine, and then follows this language: "But neither the boarding, pebbling, and glossing machine of Coogan, with its rolls revolving in the same direction to carry the end of a folded sheet of leather in an opposite direction, nor the device in the Roberts machine for pressing a hide against a pressure roll, nor the mechanism shown in the Harrington patent for pressing a hide against a knife cylinder without changing its relative position to the other feed roll. constitute the spirit of my invention; and neither of the three patents show or describe two feed rolls for feeding a hide or skin to a scouring roll, so arranged in relation to each other and to the scouring roll that one of said rolls may be lifted from the other and held apart while a hide which has been improperly fed is drawn back by the operator before it has passed the scouring roll, to be properly fed to the said scouring roll, which constitutes the spirit of my invention."

Then follows an amended first claim in the following language, to be substituted for the last amended first claim, which was rejected. "In a machine for unhairing, scouring, and working out skins and hides, in which two feed rolls are employed in feeding the hide or skin to the scouring roll, the combination with said scouring roll of the feed roll, one of which is provided with a vertical movement in relation to the other by any suitable means whereby the said rolls may be separated and held apart when desirable, for the purposes stated."

That further amended first claim was rejected in a communication from the examiner dated November 19, 1878. In a further communication from the examiner, dated November 27, 1878, we find the following language: "The last amendment and argument has been carefully considered. It has been shown by pertinent references that a combination of coacting rolls and a lever-adjusting mechanism is not novel. In fact it is common, in most leather and hide working machines, to provide adjustment with relation to each other, where feed rolls are employed, before careful examination. It is obvious in this case that the novelty, so far as the lever mechanism is involved, consists in the peculiar arrangement of such mechanism, whereby, from a single movement of the lever, the feed rolls are separated, and the supporting roll is adjusted relative to the scouring roll." That is, the examiner says, in substance: "Mr. McDonald, you can have no patent for the separation of the two feed rolls by the lever mechanism, because that feature is old; but you may have a patent for the combination of that feature with the other feature of the separation of the work roll from the supporting roll, both sets of rolls being separated by a single movement of the lever. You admit that the separation of the work roll and the supporting roll is old. We hold against your urgent contention that the separation of the two feed rolls by a movement of the lever is old; but you may have a claim for the combination of those two elements operated by a single movement of the lever."

But the applicant still remained unsatisfied. He still presses upon the pat-

ent office that the spirit of his invention is the opening of the two feed rolls combined with a work roll, in an unhairing machine, by lever mechanism; and in a communication from Mr. Clarke, dated November 23, 1878, we find the following comments: "Office letter of Nov. 19, in relation to the above-named application, is at hand, and contents noted. From its contents, I perceive that the examiner does not fully comprehend the nature of the applicant's invention. I therefore desire once again to call his attention to the matter, and I will make such a comparison between the invention of Mr. McDonald and the cited references as will show that the subject-matter of the claim, as it was intended to word it, is not found in any of the references cited. and that such adjustment can only be of use in an unhairing machine, and that none of the references cited as analogous machines describe, or in any way show or hint at, any such combination. The claim also is erased, and a more specific one inserted in lieu thereof, to more clearly express Mr. McDonald's invention." You will observe that these changes in the claim represent an effort on the part of the applicant to make more specific what his invention is, and that it relates to the feed rolls alone, the capacity of separation, with a work roll in an unhairing machine.

This first claim now assumes this form: "In a machine for unhairing, scouring, and working out skins and hides, which contains a pair of feed rolls to feed the skin to the scouring roll, and a scouring roll to work the same, the combination with the scouring roll of a pair of feed rolls, one of which is provided with suitable means of adjustment to and from the other feed roll, without changing the relations of the feed apparatus to the scouring roll, substantially as described." This certainly does not claim anything set forth and shown in either of the references, and is not itself shown in either of the mechanisms referred to.

The boarding machine of Coogan has only two rollers, not three, and therefore is lacking in one element, and a very important one, of the combination. Both his rollers are working rollers, while only one of the applicant's three is, in the same sense, a working roller. The Roberts machine, patent No 184,175, has, again, only two rolls in the described combination: or, if you add to the combination containing the adjustable roll, the feed rolls, it is a combination of four rolls, two of which are working rolls, and adjustable to and from each other, the other two of which are feed rolls, and are not adjustable to and from each other. In our case there are but two rolls, and the feed rolls contain the adjustability, and not the working rolls. In the Harrington machine, we come upon the machine which has three rolls, one of which has a working roll, as in our case. The other two are feed rolls, and one of the feed rolls is movable, and swings upon the axis of the other to and from the scouring roll, thus acting as a working roll or pressure roll, as in the case of the Roberts machine. But this machine does not embody the combination of feed rolls adjustable to various gauges, with a scouring roll set with relation to the feed rolls at an unvariable gauge, but it embodies the combination of a scouring roll set at a variable gauge with one of the feed rolls; that is, the scouring roll is set at a variable gauge with one of the feed rolls in the Larrabee of Harrington device. The feed roll may be moved towards the scouring roll.

It is not the time when the adjustment of the roll takes place that is important. It is the act that the machine is performing, and the error that it falls into, that has led to this improvement; and it is clear that if such an error should be committed by the Harrington machine as the one we are providing against,—that error being the wrong presentation of the hide, and the capacity to withdraw it by the workman,—it could not be corrected in the same way. It could not be corrected in the same way in the Larrabee or Harrington machine, because, according to the applicant's interpretation of that machine, the feed rolls had no motion with respect to each other. But it is also true that the Roberts machine presents no method analogous to this for correcting a similar error in the working machine; and inasmuch as the Coogan machine cannot do the work which this machine proposes to do, and has no scouring roll whatever, and no feed rolls, but simply a pair of kneading rolls or dragging rolls, it is useless to consider that reference any further. Then follows this significant language: "It is therefore obvious that the combination which the applicant claims, embodying the peculiar features of a pair

of adjustable gripping rolls in combination with a working roll, towards which the gripping rolls are not adjustable" (that being the peculiar feature of the Larrabee machine), "and with which neither of the gripping rolls performs the function of a pressure roll" (that is, neither of the feed rolls, according to the spirit of the McDonald patent, performs the function of a pressure roll), "has not been anticipated, so far as any reference yet given has shown. And it must also be obvious that the claim, as now presented, indicates"—what? "Fairly, the peculiarity of this invention, and is not broader than the invention itself." That ends the correspondence with the patent office.

What followed? The applicant accepted the position taken by the patent office, and the patent was issued as we now find it. The patent office said, in substance, to McDonald: "You cannot have a claim for what you consider as the spirit of your invention, namely, two feed rolls so arranged with reference to each other and to a scouring roll that one of said feed rolls may be lifted from the other and held apart while a hide which has been improperly fed is drawn back by the operator before it has passed the scouring roll; but you may have a claim for this feature, which is old, in combination with another feature which you admit is old. In other words, you may have a claim for that special arrangement or combination whereby, from a single movement of the lever, the feed rolls are separated, and the supporting roll is adjusted to the scouring roll." This position was accepted by McDonald, and the patent was issued.

I think the proceedings in the patent office, and the language of the specification, show that McDonald never contemplated, as included within his invention, a feed roll which performed the double function of a feed and pressure roll. Indeed, when he has referred to such a roll in the Larrabee machine, he denies that his feed roll has any such double function. He says, in substance, that his feed rolls do not perform the function of a pressure roll, and that his feed roll is not adjustable towards the scouring roll. It was natural for him to say this, for this was the type of the three-roll machines as represented by Larrabee, Weed, and Sheldon, and he was dealing with a four-roll machine of the Roberts class. I think it may be fairly said that McDonald has disclaimed the use in his machine of a single feed roll which has the additional function of a pressure roll.

If, however, we assume that no such limitation exists, we are met with a further difficulty, assuming that the patent is not thus limited.

If the first two claims in the patent are to be interpreted without regard to what took place in the patent office, or to the recital in the specification of the patent to which I have referred, we must then examine the scope of those claims. The first claim covers broadly the combination with feed rolls and a supporting roll of a lever and intermediate mechanism, whereby, by a single movement of the lever, the feed rolls are separated, and the supporting roll adjusted to the scouring roll; and the second claim is for the feed rolls which can be separated, and a scouring roll and a supporting roll which can be separated, the intermediate mechanism not being specifically made a part of this claim. These claims, as I interpret them, include only the four rolls, and the means for separating them by a single movement of the lever. Now, if we say that these claims are not limited to the use of four rolls, but that they cover a machine with three rolls, in which the lower feed roll acts both as a feed and pressure roll, then we are met by the Weed patent, where by a single movement of the lever the lower feed roll is separated from the upper feed roll and the work roll. This patent appears to have escaped the attention of the patent office. Whether Weed used the same or a different kind of work roll makes no difference, provided that the essential thing was present in his machine, of separating all the rolls by a single movement of the lever or treadle. Nor does the fact that the act of pressing the foot on the treadle in the Weed machine brings the rolls together, while the same act in the McDonald machine releases the rolls, seem to be regarded by McDonald as a part of his invention. I was at first inclined to attach importance to this distinction, but upon reflection, supplemented by the evidence, I am satisfied I was mistaken. The circumstance that the rolls are held together by spring pressure in the McDonald machine is not an element in these claims. The words "substantially as described" do not enlarge the terms of a claim beyond what is mentioned or referred to in the claim as the elements of the combina-

tion. If, therefore, these claims of the McDonald patent are to receive the broad construction which their language justifies, they are anticipated by Weed. In the old equity case of McDonald v. Whitney, 24 Fed. 600, the Weed patent was not before the court.

It being admitted in the present case that the defendant's machine is constructed with three rolls, the lower feed roll acting both as a feed and pressure roll, I must direct a verdict for the defendant, on the ground that there is no evidence to go to the jury to support the charge of infringement.

James Milton Hall, for plaintiffs in error.

Joshua H. Millett and Ralph W. Foster, for defendant in error.

Before PUTNAM, Circuit Judge, and NELSON and WEBB, District Judges.

PUTNAM, Circuit Judge. When this case was before this court on a prior occasion, the exceptions were not framed to bring before us the issue which is now raised as to the construction of the plaintiffs' patent, but only the proper manner of submitting to the jury certain other issues, which, it was not disputed, were proper to be submitted to it in some form. We are now asked to consider the question raised by the following extract from the record:

"After the evidence was all in, and counsel had submitted requests for rulings, the presiding judge directed the jury to return a verdict for the defendant on the ground that there was no evidence to go to the jury to support the charge of infringement, and ruled as follows: The evidence being closed in this case, and the requests for rulings having been presented by the counsel upon both sides, I am prepared now to state the conclusions that I have reached with respect to the construction of the McDonald patent in suit, which has an important bearing upon the case. I am of opinion that the McDonald invention, described in claims 1 and 2 of his patent of December 10, 1878, must be limited to a machine containing two feed rolls, a supporting roll, and a scouring roll, and that a machine which contains three rolls—the lower roll acting as a combined feed roll and a supporting roll—is not within the patent."

What follows this need not be recited at this point, as it only gives the explanation by the presiding judge of the reasons governing his conclusion. As it does not appear that the defendant below asked that a verdict should be directed for him for any particular reason specified by him, or that he in any way limited himself, it follows that if the conclusion of the circuit court was right the reasons which led to that conclusion afford plaintiffs below no ground of question in this court.

In the extract we have made from the record the issue is first put as one of infringement, but subsequently it is stated as one of construction of the plaintiffs' patent. Either way of stating it may be said to be correct. When the essence of an alleged infringing machine is not in dispute, so that the question of infringement by it turns so plainly on the true construction of the patent alleged to be infringed that, such construction being ascertained or not in dispute, a verdict in one direction ought to be set aside as against the weight of evidence, then, under the rule as now understood, the court ought to direct a verdict in the other direction; and under such circumstances the issue of infringement is essentially the same as that of the construction of the patent in suit. In the case at bar there was no dispute as to the essence of defendant's

machine, and there can be no reasonable question of fact that, upon one construction of the plaintiffs' patent, defendant's machine infringed it, and upon another that it did not.    And if, therefore, the construction of plaintiffs' patent was for the determination of the court, either on the face of the patent, or on the face of the patent in connection only with facts of such nature that their existence and effect could not be reasonably disputed, it follows that the entire issue of infringement was practically for the court, however it might have been with issues of novelty and patentability, or other issues which might have been raised if the issue of infringement could properly have been submitted to the jury, or determined for the plaintiffs.

So far as concerns what is for the court and what for the jury, there is no essential distinction between patents for inventions and other instruments.    Primarily, the construction of all of them is for the court; and yet all such, even obligations under seal, and, under some circumstances, solemn records of judicial tribunals, have relation to disputed facts, which must be determined by the jury before the construction can be finally settled.    In such instances the issue is often spoken of as one of mixed law and fact.    Yet, the doubtful facts being determined, the construction remains for the court, though the form where verdicts are general and not special may have a different appearance.    Where the facts are not in dispute, or, if in dispute, are so clearly proven and of so clear effect that they come within the rules for directing verdicts, the construction of the instrument remains throughout practically for the court, even though under the form of directing the jury what determination to make.    This was the precise condition of this case in the circuit court.    It is quite probable that, if the question of infringement could have been determined in favor of plaintiffs, other issues would have followed, which must have gone to the jury.    Such issues have been discussed before us, but, if the issue of infringement was correctly determined in connection with the construction of the patent in suit, we have no occasion to refer to others, except to remark that it was not necessary to send the case to the jury on account of contingencies which might have made these important, but did not.

Holding these rules in view, the case becomes very simple.    The progress of McDonald's application through the patent office was clearly and fully explained by the learned judge in the circuit court; but we need not refer to it, except briefly.    The first claim, as originally offered, was as follows:

"In machines for unhairing and scouring skins and hides, the feed roll, D, in combination with the treadle, F, and suitable connecting mechanism, whereby the rolls may be separated and held apart, substantially as described, and for the purposes set forth."

There was also, originally, a second claim, as follows:

"In machines for scouring and unhairing and working hides and skins, the combination of the supporting roll, G, with the treadle, F, and suitable connecting mechanism, whereby the same may be moved and held from the scouring roll, substantially as and for the purposes set forth."

These were each rejected as having been anticipated by prior patents, and for the additional reason, given by the examiner, that "it is common, in leather-working machines, to provide vertical adjustment to rolls or cylinders by means of levers and their intermediate devices." McDonald acquiesced in the position of the examiner; and the final result was the first claim as it now stands, covering a combination which, according to its letter, contains, as elements, two feed rolls, a pressure roll, and a working roll,—in all, four distinct rolls, arranged in two sets, with levers for opening each set simultaneously. The second claim was originally drawn as the third claim, and was in essence the same as the first claim now is, and has always so remained. The proceedings therefore involve a clear and unquestionable disclaimer, by amendment, of a combination which adjusts merely one feed roll or one pressure roll with reference to another roll, even under all the limitations of the rule touching this form of disclaimer fully stated by this court in Reece Button-Hole Mach. Co. v. Globe Button-Hole Mach. Co., 61 Fed. 958.[1] Neither is the effect of this amendment complicated by the proposition now made, that McDonald was the first to construct a machine in which the rolls were closed when the machine was in its normal condition, and that this was a distinguishing feature of his combination, to be protected by the doctrine of equivalents. This particular of his machine appeared in his first and second claims as first drawn, so that, if this was a feature of novelty or a function of his invention, these claims, as thus drawn, should have been allowed; and it follows that his disclaimer by amendment covers this feature or function also.

Now, with reference to the adjustment of the rolls, the record shows clearly the construction, operation, and principle of the alleged infringing machine, and in this connection there can be no dispute nor obscurity. Plaintiffs' declaration contains a continuando, covering the period from the 5th day of August, 1885, to the date of the writ, and we have no concern with the somewhat different machines built by the defendant between 1881 and 1885. The defendant's machines involved in this suit are clearly described in the record as having three rolls, held together by spring pressure and a treadle and lever mechanism, by which all the rolls are simultaneously separated by a single movement of the lever. It appears by the record that this machine has the feature, apparently common to all three-roll machines, by which one roll serves the purpose of both a feed roll and a pressure roll; and the separation in the defendant's machine in controversy, the record says, is brought about by this feed and pressure roll moving away from the upper feed roll and the work or scouring roll. In another place in the record the operation in this particular is described in the following language:

"The Whitney machine has an upper feed roll and a lower feed roll, so that it has two feeding points. The upper feed roll and the lower roll, working together, do nothing but feed the hide along, precisely the same as the

---

[1] 10 C. C. A. 194.

upper feed roll and the lower feed roll feed it along in the McDonald, and they have no other function. The lower feed or pressure and the work rolls in the Whitney are also feeders. The rubber or lower roll acts as a feed roll upon the surface next to the upper feed roll. It acts as a feed roll also upon the surface next to the work roll. At that last-mentioned point it also acts as a pressure roll to make this roll work; that is, unhair the hide."

Again, on page 20:

"Pressure on the treadle in the Whitney machine throws the lower roll out in a lateral direction, and releases it from the work roll, and also from the feed roll above, and it releases the hide from two points."

It thus appears that in the operation of the alleged infringing machine only one roll is adjusted or moved. The proceedings in the patent office disclaim, as old, the use of a treadle and levers by which a single roll can be operated and adjusted; and McDonald's invention was thus admittedly limited to the more complicated system of levers and connections required to operate simultaneously, easily, and for practical purposes, two rolls, each of them embraced in different sets of rolls in the same machine.

Whether, in any event, anything claimed by plaintiffs to have been accomplished by McDonald involved invention, within the requirements of the patent laws, or whether he was anticipated, except so far as admitted by the proceedings in the patent office, or whether the general principles of the defendant's machine are the same, or its mercantile qualities depend on the same general features, as the plaintiffs', we do not determine. If the case turned on any of these issues, the law might have compelled the court below to ask the aid of a jury touching it; but, as the case in fact stands, they can all be assumed to be as maintained by plaintiffs, or passed by entirely, because the case is disposed of before their consideration is reached. We refer to them again only to make sure that it is not misunderstood that we are dealing only with the face of the patent, and with undisputable facts of the character which we have described. To return, therefore, to our last proposition, we add that each of the two claims of plaintiffs' patent under consideration harmonize with that proposition by the use in this particular of clear and positive expressions. Each of them, in terms, includes two full sets of rolls as elements in the combination. The rule, prima facie, is that, while the use of equivalents for an element in a combination is not lawful, yet a combination which does not include all the elements does not infringe. There may be exceptions where the nature of the invention is of such a primary or broad character that it is plain some of the elements named are unessential; in other words, where the invention is so broad that the range of equivalents will be correspondingly broad, under the liberal construction which the courts give to such inventions. Miller v. Manufacturing Co., 151 U. S. 207, 14 Sup. Ct. 310. But there is no reasonable basis for maintaining, either as a matter of law or fact, that the case is outside of the rule applied to ordinary combinations in Meter Co. v. Desper, 101 U. S. 332; Fay v. Cordesman, 109 U. S. 408, 420, 421, 3 Sup. Ct. 236; Knapp v. Morss, 150 U. S. 221, 228, 229, 14 Sup. Ct. 81; and Dunham v. Manufacturing Co. 154 U. S. 103, 14 Sup. Ct. 986.

The appellants rely on Royer v. Belting Co., 135 U. S. 319, 10 Sup. Ct. 833, laying down the rule that the question of what is a primary or pioneer patent, and also the question of the differences between the patented machine and the alleged infringing machine, are for the jury; but even in this case the court (page 325, 135 U. S., and page 833, 10 Sup. Ct.) recognizes the exception that these questions are not to go to the jury when, if a verdict should be found on them for the plaintiff, it would be proper for the court to set it aside. That in the present case any finding of a jury that McDonald's invention, in whatever form it could reasonably be stated by the plaintiffs, was excepted from the practical application of the rule touching mere combinations stated in the cases cited, could not be accepted by the court, and that there are no facts in the case which, on any reasonable theory, could state the mechanical principles of McDonald's machine and of the alleged infringing machine, so far as they are now involved, other than as we have stated them, are plain propositions.

The reference to the Larrabee patent in McDonald's specifications, on which the appellants rely, instead of weighing against our propositions, adds to them. It is referred to, with other patents, for the purpose of stating that neither of them "show or describe two feed rolls for feeding a hide or skin to the scouring roll," etc. In the absence of qualifying matter, the fair interpretation of this expression is the literal one.

The appellants rely on the fact that the patented machine was the first successful one, and on the fact that it had great commercial success. The decisions touching the effect of these propositions are so numerous and modern that they need not be referred to specifically, but they limit the application of them to doubtful cases turning on questions of utility or patentable invention. They have no pertinency to cases which turn on the construction of the patent. We think no well-authenticated case can be found where they have been admitted with reference to such issues. On the whole the majority of the court are satisfied with the conclusion of the circuit court.

The decree of the circuit court is affirmed.