HART & HEGEMAN MANUF'G CO. v. ANCHOR ELECTRIC CO. et al.

(Circuit Court, D. Massachusetts. August 20, 1897.)

No. 696.

1. PATENTS—CONSTRUCTION OF CLAIMS—MECHANICAL EQUIVALENTS.
    In a patent which avowedly relates merely to improvements in details for the purpose of securing simplicity and economy in construction and efficiency and certainty in operation, the patentee cannot broaden his patent so as to cover equivalents of all kinds by a statement that other changes may readily be devised and still embody the general features of his invention.

2. SAME—COMMERCIAL SUCCESS.
    The rule stated in De Loriea v. Whitney, 11 C. C. A. 355, 63 Fed. 611, that the fact that a patent has been the source of great commercial success, and has laid the foundation of a prosperous business, may be evidence of novelty, utility, and patentability, but can rarely, if ever, assist in determining the proper construction of the patent.

3. SAME—INFRINGEMENT—CLAIM FOR MECHANICAL DETAILS.
    The rule applies, that, where the claim is a narrow one, concerned with mere mechanical details, a change in such details is a substantial, and not merely a colorable, change.

4. SAME—ELECTRIC SWITCHES.
    The Hart reissue, No. 11,395 (original No. 459,706), for an electric snap switch, construed narrowly, and held not infringed.

This was a bill in equity by the Hart & Hegeman Manufacturing Company against the Anchor Electric Company and others for alleged infringement of reissue patent No. 11,395, dated February 13, 1893, to Jerrold W. Hart, for improvements in switches for making and breaking electric circuits supplying electric lights and similar electrical apparatus. The original patent was granted September 15, 1891, and numbered 459,706.

Chas. E. Mitchell, Bartlett & Brownell, and Chas. L. Burdett, for complainant.

Edward P. Payson, for defendants.

PUTNAM, Circuit Judge.    This patent purports to be for new and useful improvements in electric snap switches.    It contains but one claim, which is as follows:

"The herein-described snap switch, consisting of a stop plate having stop shoulders, a central hub, and operating handle, an eccentric moving with said hub, a switch plate, a spring plate, a spring, and a catch operated by said ec-

centric for releasing and stopping the switch plate, substantially as described, and for the purpose specified."

All we find in the specification showing the nature of the invention is in the following language:

"My invention relates to improvements in electric snap switches, and the ob· jects of my improvements are simplicity and economy in construction, and general efficiency and certainty in operation."

We find nothing in the specification pointing out any new function, or any specific advance on the state of the art, and no indication of anything except simplicity and economy in construction, and general efficiency and certainty in operation, all of which may come from mere improvements in details. Neither do we find anything indicating wherein the pith of the alleged improvement consists, unless it be in the following language: After describing different constructions, by one of which the catch on the first movement of the handle and eccentric is moved radially inward, instead of outward, the specification says, "In both of the constructions shown the catch is moved radially outward and inward by the positive movement of the eccentric." This would seem to indicate that the eccentric, or the peculiar form of the eccentric, was the central point of the complainant's alleged improvements; but in the very next paragraph of the specification occurs the expression, "this eccentric or crankpin," indicating that the eccentric is only generic, and not necessarily involved in the pith of his claim. Near the close of the specification, after describing the working of the device, the patentee emphasizes it by saying, "The construction is simple, efficient, and certain in operation." He nevertheless concludes as follows:

"Having indicated certain changes in the application of this eccentric or crank pin·for engaging and disengaging the catch, it is evident that other changes may be readily devised, and still embody the general feature of my switch."

An attempt like this to cover equivalents of all kinds may well be supported by the courts when they can see that the pith of the invention means such an advance in the state of the art as justifies them in so doing; but, from all that appears on the face of this patent, this attempt of the patentee thus to broaden out his patent may be entirely unauthorized and ineffectual. Such a statement does not assist to construe a patent unless it is first determined whether the patent relates to a substantial advance in the state of the art, or concerns only improvements in mere details. In the determination of this latter question lies the turning point of this case. In order that the complainant's patent may be thoroughly apprehended, we abstract from the specification a statement of its operation, omitting references to the drawings, as follows:

"By turning the handle, the central hub and parts rigidly connected therewith move with it, carrying the eccentric and spring pin, thereby compressing the spring and also moving the switch plate laterally, thereby carrying the catch radially outward to withdraw it from one of the stop shoulders of the stop plate. As the central hub is moved onward the catch is wholly withdrawn from the stop shoulder of the stop plate, so as to release the switch plate and permit it to snap around under the full force of the spring, its movement being arrested as the catch comes in contact with the succeeding stop shoulder on the stop plate. When the switch plate thus moves nearly one-quarter of a revolution on its axis, the central hub is relatively stationary, so that the eccentric

becomes for the time being the axis of the switch plate, and consequently the catch is drawn radially inward towards the central hub as the switch plate advances, and is stopped by the succeeding stop shoulder. By turning the handle again the parts will operate as before, and the switch plate will be stopped at the next quarter of a revolution on the succeeding stop shoulder, whereby the moving contact pieces are brought into or out of contact with the stationary contact pieces, as in ordinary switches of this class."

Turning now from the patent itself to the propositions which have been submitted to us by the complainant in its proofs and at the hearing before us, we are unable to deduce from them any facts or propositions broadening out the nature of the invention. The common arguments that the patent has been the source of great commercial success, and has laid the foundation of a prosperous business, do not assist us, not merely for the reasons generally stated as meeting such propositions, but because, at the most, propositions of that class tend only to support novelty, utility, and patentability, all of which, for the purposes of this case, we think must be conceded. They rarely, if ever, assist in determining the proper construction of a patent. De Loriea v. Whitney, 11 C. C. A. 355, 63 Fed. 611, 621. It has been fully explained to us that the practical necessities for a useful switch of this character are that it shall move with a snap, and be arranged to be properly locked, so that the movement and the locking shall not depend on the will or skill of the operator, and, moreover, that it is preferable that it should always revolve in the same direction. But the witnesses for the complainant, in speaking of these desirable and necessary qualities, make no claim that they were first found in the switch at issue, or even that they were first combined in that switch. The complainant's specification, in one of the extracts which we have made from it, contains the words, "the general feature of my switch." The complainant's expert, on being asked on cross-examination what these words refer to, answered as follows:

"I think it means the general combination of the parts shown and described, or, in other words, substantially the switch pointed out and referred to in the claim. I presume the word was originally written in the plural, and by a clerical error the 's' was omitted, because no one feature of the switch, considered separately, is particularly pointed out in contradistinction to any other feature, and furthermore the word 'general,' in connection with a machine, would not be likely to be used as to any one part."

Again the same expert stated as follows:

"In another answer I understand Mr. Freeman to say that the only novelty of the switch of the Hart reissue resides in the specific details of construction of the various parts. I do not agree with him in this conclusion, as in my opinion the novelty of the switch of the Hart reissue resides in the combination of parts, or, rather, resides in the switch as a whole, when consisting substantially of the parts shown and described in the patent combined together, without the necessary addition of other elements to produce the switch described."

It thus appears that the complainant's principal witness fails to point out any particular function with reference to which the complainant's device is an advance on the state of the art, and enhances the impression, which is derived from the patent itself, that what the patentee did concerns only improvements in mere detail. The file wrapper shows an interference declared by the patent office as against certain claims which originally accompanied the application,

82 F.—58

and a consequent determination of the office against those claims, by virtue of which they were rejected, which increases in the mind of the court the impression as to the nature of this patent formed by reason of the matters already stated. In addition to this, the forms of snap switches and of other snap movements accomplished by the aid of springs, stops, and catches, with or without eccentrics or crank pins, are so innumerable, and have established a common ground so extensive, that the presumption against finding in any device of that character a substantial advance on the state of the art is too strong to be overcome by anything except a clear and explicit case. If there is anything of that nature in the case at bar which the court has overlooked, the complainant must attribute it to a lack of a frank and open statement of it on the face of the patent. Therefore, on the questions of the nature and extent of the invention, and of the consequent rules to be applied in construing the claim in issue, the case is quite analogous to Masten v. Hunt, 51 Fed. 216, affirmed by the court of appeals for this circuit in Masten v. Hunt, 5 C. C. A. 42, 55 Fed. 78; and the rule of construction to be adopted is that so often stated by the courts, and repeated by the court of appeals in this circuit in Ball & Socket Fastener Co. v. Ball Glove-Fastening Co., 7 C. C. A. 498, 505, 58 Fed. 818, 825, as follows:

"As the claim comes down to the merest mechanical details, a change in such details is not a colorable departure, but a substantial one, so far as this patent is concerned."

The respondents manufacture a device clearly described and explicitly covered by a patent issued to one Marshall, of a subsequent date to that held by the complainant. In view of the nature of this latter patent, which in no way assumes to cover a mere improvement on the device of the complainant, the same presumption appears to exist in favor of its validity as exists in favor of the validity of that in suit. It would not, however, be safe for the court to proceed on this presumption alone. The principle of action of the respondents' device is undoubtedly substantially the same as that of the complainant's; and the respondents' also has every element specified in the complainant's claim, or its well-known equivalent, except the spring plate. The respondents use a spiral spring; while the complainant uses a flat one. These, of course, are ordinarily regarded as equivalents for each other. Moreover, if the court was able to ascertain that the complainant's device was of a broad character, indicating a substantial advance in the art, it might be justified in holding that, although the spring plate is omitted in the respondents' device, yet inasmuch as, taken as a whole, it has what is equivalent to the complainant's device as a whole, including the substance of it, the complainant's patent should therefore be construed liberally and broadly, so that infringement might properly be found. But, looking at the complainant's patent in the light in which we are compelled to look at it, as already explained, the question arises whether there is an equivalent in the respondents' device for the spring plate stated as an element in the complainant's claim. The complainant's expert maintains that there is such an equivalent. In regard to the spring plate, he says that its function is to unite one end of the spring with

the central shaft or hub, so that the spring may exert a pressure tending to rotate the shaft. All this is found in the respondents' structure,—that is to say, one end of the spring is united with the central shaft in such a way as to exert pressure tending to rotate it; but there is no theory of the definition of words by virtue of which the function of the spring plate can be held to be what is so stated by the respondents' witness. The natural interpretation of the term "spring plate," in this connection, is a plate which holds up the spring. That is the function which is performed by it here, and there is no rule for any technical interpretation of the term, so far as we are aware, or which is pointed out to us, which gives it any other signification. It is true that the function of the spring itself in the respondents' device is the same, and it operates substantially in the same way, as in the complainant's device; but by directly connecting one end of the spring with the central shaft, which is practical, by reason of its being a spiral spring, as we have already said, the spring plate is dispensed with by the respondents. Therefore, on carefully analyzing the testimony of the complainant's expert, it is to the effect only that several parts of the respondents' device, taken together, are the equivalent of several parts of the complainant's device, taken together, which does not meet the case. The ordinary rule is that, with a claim of this character, where, for aught that appears, the invention is narrow, every element expressly specified as such must be met by an equivalent element in the alleged infringing device; and it is not sufficient that a less number of elements in the infringing device is the equivalent, taken together, of a larger number of elements in the patented device, also taken together. Complainant's device, and also its patent, use, as we have already said, a flat spring, with no expressed suggestion that a spiral spring could be substituted for it. The relations of the flat spring are all carefully explained in the drawings and specification. Consequently, the spring plate, with an upright stud inserted in it, to which stud one end of the flat spring can be conveniently secured, is carefully described as one of the parts of the device. The specification also states that this spring plate is provided with a slot, through which passes another stud, against which the opposite end of the spring acts; and it especially points out that the spring lies between this and another plate, which is called the "cap plate." Therefore it is plain that the spring plate of the complainant's device is not indicated merely in a general way as standing for anything which can be substituted for use with a spiral spring, but it is specifically and elaborately worked out and explained, as showing what the patentee regarded as necessary to enable him to accomplish "simplicity and economy in construction, and general efficiency and certainty in operation." In the respondents' device, by reason of the use of the spiral spring, this spring plate, with its hub and slot, is unnecessary, and therefore properly dispensed with. Whether or not it involves the same degree of simplicity, economy, and compactness, we have no occasion to determine. It is enough that we think the respondents' omission of the spring plate as unnecessary to their form of construction, and the other consequent changes in several particulars, relieve

the respondents from the charge of infringement.    If the complainant has, any remedy, it is not in the courts, but in convincing the purchasing public that the device of the respondents is, on account of the changes to which we have referred, less simple, economical, and compact than its own.    Let the respondents file a draft decree dismissing the bill with costs;  said draft decree to be filed on or before the 11th day of September next;  corrections thereof to be filed on or before the 18th day of September next.