W. H. COIL, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, February 25, 1896.

The Evidence in this cause is considered and *held* to be entirely opposed to the verdict.

*Appeal from the Greene Circuit Court.*—HON. JAMES T. NEVILLE, Judge.

REVERSED.

*Rathbun & Son* for appellant.

*James M. Lewis* and *Hamlin & Hamlin* for respondent.

ROMBAUER, P. J.—The action was brought before a justice of the peace, where the plaintiff, on a trial by jury, recovered a verdict for $82. In the circuit court, where the cause was again tried by a jury, the plaintiff recovered a verdict for the identical amount. The defendant appeals from the judgment entered upon this verdict, and assigns for error that it is equally opposed to the testimony of both the plaintiff and the defendant, not supported by either, and opposed to the instructions of the court; also, that the court erroneously refused certain peremptory instructions asked by the defendant.

The statement of the plaintiff claims that he was employed by the defendant as its soliciting agent on the tenth day of March, 1894, and continued in such employment until March 25, 1895, and that, in consequence of his services, the defendant became indebted to him for commissions on business solicited by him in the sum of $116.60, and, as a gratuity for one year's faithful services, in the sum of $100, making an aggregate of $216.60, for which he sues.

The defendant filed a written denial of this statement, and set up a counterclaim consisting of the following items:

Balance due company, deficiency of collections ................ $ 34.12
Number of lapses on new business, 8.67
Fifteen times increase paid defendant (sic) and now charged
    to his account ................................................ 130.05

        Making an aggregate of.... .................... $164.17

The answer further stated that the plaintiff had not submitted to the defendant, at any time before his

bringing this suit, a written statement of the particulars of his claim against the company, which, by the terms of his contract, was a condition precedent to his maintaining an action. This fact was pleaded in abatement of the present suit.

All the testimony concedes that the services were performed under a special written contract signed by the plaintiff, which contains the following provisions bearing on the present controversy:

*Clause 6* provides: "The total amount of weekly premiums in life policy register, after deducting the total weekly premiums in the lapsed policy register, are to be debited to my account on Monday of each week. This amount, known as collectible debit, is made a basis of my compensation. This collectible debit shall be considered as having been absolutely received by me for the company, and the company shall not be required to prove that I actually received the premiums, or any of them."

The item of $34.12 in defendant's counterclaim arose under this clause, and there is no substantial controversy touching the fact that it is a proper item of debit against the plaintiff.

*Clause 10* provides: "My appointment as agent may be revoked and agreement terminated with or without cause, and without notice, and such salary as I shall receive up to date of termination of this agreement by the company shall be in full payment and satisfaction of all my services to the company, and of my compensation under this agreement and of all claims upon the company."

The defendant read upon the trial twenty-three special salary receipts for varying amounts executed by the plaintiff, the last bearing date November 23, 1894, and each being in the following form:

"For and in consideration of $———, to me in

hand paid by the Metropolitan Life Insurance Company, the receipt whereof is hereby acknowledged, I do hereby release and forever discharge the Metropolitan Life Insurance Company, and its successors, of and from any action, causes of action, suits, controversies, claims and demands whatsoever for and by reason of any matter, cause, or thing, to the day of the date of these presents, and particularly from any special and reserve of special salary for services heretofore rendered under my agreement with said company, as its agent.''

The plaintiff furnished no evidence explaining or contradicting these receipts.

*Clause 7* of the contract provides: ''The condition of my account with the company, either before or after the termination of my employment by the company, shall be ascertained and determined by inspection of my weekly accounts or my ledger, and by my collection book or the premium receipt books of the policy holders included in my debit. Such inspection may be made at the direction of the company at any time with or without notice to me and by any person authorized by the company to make it, and, when made before or after the termination of my agency, and whether I shall be present as the inspection or not, I agree that the actual condition of my account with the company shall be determined by the report of the inspection, as it shall be made by the authorized person aforesaid, as he shall compute the same from his entries in the inspection. And I hereby give such employee, who shall inspect my agency as aforesaid, full power and authority to compute the sum due by me to the company, as it shall appear upon such inspection by him, and I hereby ratify his computations and agree that the result thereof shall represent my indebtedness to the company, hereby waiving the production of any evidence other than such report and account.''

In support of said clause the defendant introduced the assistant superintendent of the defendant company, who stated that he had carefully examined the plaintiff's account with the company, and that the result of such examination was that the plaintiff at the date of his discharge, or within a period shortly thereafter, was indebted to the company in the various items stated in the counterclaim. It was not shown that this examination was in any way fraudulent or oppressive. It appeared beyond contradiction that the plaintiff was short in his accounts to the company when he was discharged, and that the new business which he had obtained for the company was of such poor character that, out of $35.10, $32.17 lapsed before the examination of his account was completed, which was within a few weeks after his discharge. In fact, the plaintiff admitted that he had not even paid the dues on a policy carried by himself.

The gratuity of $100 claimed by plaintiff was sought to be supported by the following publication made by the defendant:

"AGENT'S GRATUITIES.

"To any agent whose first official credit for business is on or after January 1, 1894, and who continues uninterruptedly in the service of the company, either as agent or assistant for a term of one year, there will be paid in cash within thirty days after the expiration of such year a gratuity of one hundred dollars.

"But the payment of any gratuity will be subject to the agent's being in the service of the company, and of his account being in a condition entirely satisfactory to the company, at the time the payment falls due."

Both the superintendent and assistant superintendent of the defendant testified without contradiction that

this gratuity is what its name indicates, a gift or reward on part of the company to its agents who perform their duty for one year to its entire satisfaction, and that the plaintiff was not entitled to it because his work was thoroughly unsatisfactory to the company.

The clause of the contract which the defendant pleaded in abatement of the suit was likewise in evidence, and reads as follows: "No action at law or suit in equity relating to my employment as agent shall be maintainable until ten days have expired after service upon the president or secretary of the company of a written statement of the particulars and amount of my claim against the company," etc.

It distinctly appeared that the plaintiff had never made such written claim.

We have set out the evidence thus fully, because it is inconceivable how, under the instructions of the court, the jury arrived at the verdict rendered upon this evidence. The court properly instructed them that the plaintiff was bound by the clause of the contract, which made the finding and statement of the company officers conclusive against him. *Owiter v. Insurance Company*, 24 N. Y. Sup. 731; *Williams v. Railroad*, 112 Mo. 463, 487, 488. The defendant's counterclaim was established beyond controversy, yet the jury wholly disregarded it. The plaintiff's claim for a gratuity was wholly unestablished, and his receipts were undisputed, yet the jury allowed him $82 on some theory of their own which is wholly unsupported either by the evidence or the law.

The court was asked to instruct the jury to find the issues for the defendant. This instruction should have been given. All the judges concurring, the judgment is reversed.