### STENTOR ELECTRIC MFG. CO., Inc., v. KLAXON CO.

No. 4.

District Court, D. Delaware.
Nov. 28, 1939.

Murray C. Bernays and Abraham Friedman (of Ernst, Gale, Bernays & Falk), both of New York City, and Paul Leahy (of Ward & Gray), of Wilmington, Del., for plaintiff.

Hugh M. Morris and Edwin D. Steel, Jr., both of Wilmington, Del., for defendant.

NIELDS, District Judge.

A verdict for $100,000 was rendered in favor of the plaintiff and judgment entered thereon.

Defendant moves: (1) To have the verdict and judgment set aside; (2) to have judgment entered for defendant; or (3) a new trial granted.

Plaintiff moves that the judgment be corrected to include interest on the amount of the verdict at the rate of 6% per annum, from the date of the institution of suit to the date of the entry of judgment, in the sum of $60,821.92.

The grounds of defendant's motions are:

1. That the complaint sets forth no cause of action, in that, article 13 is too vague and indefinite to be enforceable. The article provides that the defendant "will use its best efforts to further the manufacture and sale of the articles covered by this agreement, and to that end it will maintain an efficient organization for the manufacture and sale of said articles".

2. That upon the breach of such a license agreement as the one in suit, it must be ruled as a matter of law either that no money damages at all are recoverable or that the recovery must be limited to the nominal sum of six cents.

3. That the proof of commercial utility of the articles covered by the agreement does not support a verdict in favor of the plaintiff.

4. That the court erred in refusing to instruct the jury as prayed by the defendant in its 27th prayer as follows: "27. The Spence receiver patent conferred no authority upon the defendant to manufacture the cone or dynamic type of radio receiver. This is true, even though it be assumed that the words of the claims of the Spence receiver patent read upon the diaphragm and mounting of the cone or dynamic type receiver".

5. That the court erred in charging the jury as follows: "It is for the jury to determine whether or no the patents were limited to the devices specified therein and whether the patents so limited were of any commercial value".

6. That it was error for the court to grant plaintiff inspection of Prickett Exhibits Nos. 300 to 1087.

7. That the testimony of Hollister upon a subject defendant opened over plaintiff's objections should not have been received.

8. That the verdict was excessive.

The scope of a motion to set aside a verdict or for a new trial has been repeatedly dealt with. This court held: "It is not, however, a sufficient ground for a new trial that the verdict is merely

against a preponderance of the testimony, or that the court might have arrived at a different result, but the verdict must be manifestly and palpably against the evidence in the case." Weed v. Lyons Petroleum Co., D.C., 294 F. 725, 733, affirmed 3 Cir., 300 F. 1005.

Such a motion based upon the alleged excessive amount of the verdict has been frequently considered: "Conceding that the amount of the verdict is larger than the court would have given if the cause had been tried by it without a jury, this fact alone ought not to induce the court to grant a new trial. The matter of assessing the damages is, in cases of this character, exclusively within the province of the jury to determine, and the court should never interfere with the verdict, unless the amount is so excessive as to indicate passion and prejudice on the part of the jury, and cannot be accounted for in any other manner". Occidental Consolidated Min. Co. v. Comstock Tunnel Co., C.C., 125 F. 244, 245.

The court in charging the jury in this case adopted language usually employed in this district: "You will understand that you are not bound by anything that the court has said regarding the facts. The jury is bound in the performance of its duty to follow the law laid down by the court. As to the facts, you are entirely free to find, as you see fit, in accordance with the principles of law given you by the court. In mentioning facts the sole purpose of the court is to assist the jury but not to usurp or attempt to usurp the power belonging to them".

Defendant's grounds for setting aside the verdict will be considered seriatim.

The court reaffirms its charge to the jury that the complaint clearly states a cause of action.

Defendant does not claim as a matter of law that damages for loss of profits are never recoverable. In its brief defendant states: " * * * since Hadley v. Baxendale [1854], 9 Ex. 341, or even earlier in Masterton v. Mayor [etc.], of [City of] Brooklyn, [1845], 7 Hill [N.Y.] 61 [42 Am. Dec. 38], loss of profits which were the direct and immediate fruits of the contract have been allowed." In this connection defendant states: "One is struck upon reading the cases by the unanimity of decision since 1845 to the effect that anticipated profits may be a proper element of damages, but that in certain cases susceptible of definite classification, anticipated profits are so inherently uncertain that their recovery will be denied."

Defendant contends that this case is controlled by the rule that anticipated profits of a new and untried business may not be recovered as damages for breach of contract. Cramer v. Grand Rapids Showcase Co., 223 N.Y. 63, 119 N.E. 227, 1 A.L.R. 154. The business of plaintiff was not "a new and untried business". Plaintiff was organized in 1913. During the early and experimental years it made no profits. In 1917 after charging off taxes, salaries and depreciation it showed a net profit. When the license agreement was made, plaintiff delivered to defendant contracts aggregating $240,000 upon which defendant realized a net profit. In subsequent years profits were realized from a business of nearly $1,000,000 without any promotion or exploitation into new fields. Here, a going business was turned over to defendant upon a profit-sharing basis and upon defendant's undertaking to use its best efforts "to further the manufacture and sale of the articles covered by this agreement".

Defendant further contends that license agreements with respect to patent devices are sui generis. This argument is based upon the language of the District Court in Crowe v. Oscar Barnett Foundry Co., 213 F. 864. But the Court of Appeals, 3 Cir., 219 F. 450, in that case clearly recognized that there is nothing sui generis in a license agreement for a patented device prohibiting the recovery of damages for breach thereof.

Defendant contends that damages were not proved by sufficient and competent evidence. There was evidence of the profits earned by plaintiff in 1917 from which damages could be computed. This profit was $13,210.13. Upon that basis the net profit payable to plaintiff for the fourteen years of the license agreement would be $184,800. Defendant received from Klaxon during that period $70,000. The difference is $114,800 or $14,800 more than the verdict.

Hollister, plaintiff's witness, computed damages for the years 1928 to 1930, inclusive, in the sum of $23,424.84 on the basis of the loss suffered by plaintiff because of defendant's policy of favoring Fisher Body and Fleetwood, affiliates of General Motors. Adding this damage to the first amount, you have damages of $138,200 or $38,200 more than the verdict.

Profits for the seven and one-half months from May 20, 1918, to December 31, 1918, were $61,000. One half of this amount or $30,500 was paid to plaintiff. At that rate for the thirteen remaining years of the license agreement profits would have been paid to plaintiff of $396,000. Klaxon actually received only $40,000 leaving a difference of $356,000. Moreover, plaintiff's witness Hollister testified that plaintiff would have received a very substantial sum as its share of profits if defendant had not ignored the radio market during the years 1922 to 1927.

There was also evidence before the jury that the Spence receivers cost from $.95 to $1.10 and that defendant received on the outside as high as $3.70 per receiver and from Fisher Body and Fleetwood $2.25 to $2.50. A profit to plaintiff of $1 per receiver could be readily calculated.

In 1918 Alfred P. Sloan, Jr. was president of United Motors Corporation and in 1929 was Chairman of the board of directors of General Motors Corporation. His deposition read in evidence by defendant contains the following passages:

"Q. Without regard to the details you ultimately did recommend the making of this agreement [meaning the license agreement in suit]? A. Yes.

"Q. And the fact is that you recommended it because at that time you thought the making of this agreement would be a desirable piece of business for the United Motors, or such affiliate or subsidiary which made the agreement? A. Absolutely, or I would not have recommended it.
* * *

"Q. The agreement itself as you have pointed out is an agreement in effect for the sharing of profits? A. Yes.

"Q. Consequently I assume that the record of profits, if any, of the Stentor Company up to that time, and the possibility of profits in that operation after that time, were matters of prime interest to you? A. I must have gone into it at the time, otherwise I would not have been justified in making the recommendation. The question now is, do I recall; and the answer is, no.

"Q. But you feel certain you must have gone into it? A. Yes, it was part of my responsibility.

"Q. And you satisfied yourself both with respect to profits up to that time, and the possibility of profits which could have been

foreseen in the future? A. Otherwise I would not have recommended it."

██ Mathematical exactness is not required in computing damages: "As to this question the Court of Appeals—after stating that in its opinion the plaintiff's evidence would have supported a much larger verdict than that returned by the jury— said: 'The plaintiff had an established business, and the future profits could be shown by past experience. It was permissible to arrive at net profits by deducting from the gross profits of an earlier period an estimated expense of doing business. Damages are not rendered uncertain because they cannot be calculated with absolute exactness. It is sufficient if a reasonable basis of computation is afforded, although the result be only approximate.' This, we think, was a correct statement of the applicable rules of law. Furthermore, a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 378, 47 S.Ct. 400, 405, 71 L.Ed. 684.

With respect to computing damages the court charged the jury substantially as prayed for in defendant's prayer No. 15. The court further charged: "In considering damages you are entitled to take into consideration the merits and commercial salability of the Spence receiver and transmitter; the markets which existed for those products from May 20, 1918 to December 29, 1931; the prices at which such products could have been manufactured and sold and the profit thereon; the competition in the market of similar products offered for sale by other manufacturers and sellers; and the ability of the defendant to compete in the markets."

There was evidence before the jury of each item referred to in the charge.

On the question of commercial utility defendant contended that it did not manufacture under the Spence patents and that products manufactured thereunder would not work. The testimony of Mr. Sloan, already quoted, is a sufficient answer to this contention. He testified that he had satisfied himself of the value of the Stentor device. There was evidence before the jury that from May 20, 1918, to September 14, 1931, defendant manufactured a mil-

lion dollars' worth of business in this product stamped and sold as manufactured under the Spence patents. Defendant represented in its publications that the product was manufactured under the Spence patents. In 1919 defendant issued a pamphlet "Klaxon-Stentor Autophone" containing the following representations: "With the Autophone there is an efficient transmittal when the street is noisy, the windows open and conversation going on in the car. The patented, exclusive diaphragm of the Klaxon-Stentor Autophone makes this possible. *. * * As the speaker takes the transmitter in hand, the thumb automatically presses a small button in the handle. That is all; and then talks in a normal, easy, conversational tone to the driver. It is not necessary to use any special tone of voice. The Klaxon-Stentor Autophone reproduces any tone of the voice from a whisper to a shout and carries the message distinctly to the ears of the driver. * * * The unfailing guarantee of the Klaxon Company backs every statement made in this writing, and insures the instrument against any defect in material or workmanship."

The value of the Spence devices in outside fields was properly presented to the jury, particularly their value in circuits employing the amplifying tube and in radio sets. There was proof that the receiver was the same no matter to what use it was put. Disinterested witnesses testified that the Spence receiver worked as well or better than competing receivers then on the market in circuits employing the amplifying tube or in ordinary telephone circuits and that the Spence receiver was as good as any other receiver on the market for use in radio. It should be noted that these disinterested witnesses were actually engaged in the manufacture, assembly and testing of the device. With many persons engaged in the manufacture and sale of these patented devices for a number of years with intimate knowledge of their character, it is very significant that defendant failed to call such witnesses to testify that the patented devices lacked commercial utility.

Defendant's experts, Karapetoff and Kelley, had never heard the Stentor product in operation. Their testimony was to the effect that the Stentor device would not work in any mechanism. Yet they were faced with the evidence that defendant had sold $1,000,000 worth of these devices through the years.

"The value of expert testimony generally depends upon the facts stated as a reason for their opinions and conclusions. * * * More weight is given to the testimony of a witness based upon facts within his own knowledge and experience than to the testimony of a witness which is 'largely the assertion of a theory.'" Overweight Counterbalance Elevator Co. v. Improved Order of Red Men's Hall Ass'n, 9 Cir., 94 F. 155, 161.

That the court refused to charge the jury as prayed in defendant's 27th prayer is assigned as error. That prayer was: "27. The Spence receiver patent conferred no authority upon the defendant to manufacture the cone or dynamic type of radio receiver. This is true, even though it be assumed that the words of the claims of the Spence receiver patent read upon the diaphragm and mounting of the cone or dynamic type receiver."

Of course, a patent grants no right to manufacture. It is solely a grant of a right to exclude all others from making, using or selling the invention covered by it. It was improper for the court to charge the jury as requested in defendant's 27th prayer.

It was understood that the Stentor receiver was an ordinary telephone receiver with a special form of diaphragm and diaphragm setting and mounting. Defendant's expert Kelley testified:

"Q. Well, then, his patent if any, or his invention, if any there was, lies where? A. It lies in a thick diaphragm between air cushions which are not tightly clamped."

Defendant complains of the court's failure to charge upon the scope of the Spence patents. Defendant's prayers contained no request for such a charge. The court, however, instructed the jury as to the scope of the Spence patents:

"Before you can find that the defendant did not use its best efforts to further the manufacture and sale of the articles covered by the agreement of May 20, 1918 and that it did not maintain an efficient organization for the manufacture and sale of such articles, you must first find that the articles covered by the patents possessed commercial value and utility sufficient to justify their manufacture and sale. The defendant was not obliged under its agreement to manufacture and sell the articles covered by the patents for use in the radio

or other fields unless the patented articles were suitable and practical for use in those fields.

"You may recall, that defendant's expert Kelley testified that in the telephone art, before and after 1918, it was universally recognized that a diaphragm should be thin, fastened at its periphery and flex at its centre. In his patents Spence taught, according to the expert, that the diaphragm should be rigid, should be unfastened at its periphery and should not flex freely at the centre. In short, that Spence repudiated the universally accepted teachings of the art. It is for you to determine from the proof whether or no apparatus or devices covered by the Spence patents were marketable products."

Defendant took no exception to this instruction and did not ask for any further instruction on the point.

There was no question raised as to the scope of the claims. Defendant's expert defined that scope. There was no issue as to whether defendant's or plaintiff's devices were covered by the patents. The sole issue was whether the devices within the claims had commercial value. That question the court left to the jury. The defendant took no exception.

■■■ Defendant contends the court erred in admitting in evidence documents included in Prickett Exhibits Nos. 300 to 1087.

The grant of inspection of the above documents was not error. Long before trial plaintiff filed a motion for leave to inspect. The motion papers showed that the documents had been produced by defendant in response to a stipulated subpoena duces tecum which by its terms limited production to documents material to the case. Having produced the documents defendant refused inspection of them and the court referred the matter to William Prickett as special master. The master classified the documents solely on the basis of their materiality to plaintiff's prima facie case as he understood the issues. He reported that inspection should not be made of Prickett Exhibits Nos. 300 to 1087.

Under rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the right of inspection runs to documents "which constitute or contain evidence material to any matter involved in the action". In proving its own case defendant produced documents from among Prickett Exhibits Nos. 300 to 1087 and

caused them to be introduced in evidence. Documents offered by plaintiff from this same class of exhibits and admitted by the court related to matters "involved in the action" within rule 34.

Cases involving motions to quash indictments and to restrain prosecuting officers from using material procured by unlawful search and seizure are wholly irrelevant. So are cases where wholesale delivery of documents is demanded by administrative agencies of the Government without any attempt to show materiality or to specify the documents with particularity.

■■■ The court finds no error in admitting the testimony of Hollister and of other witnesses produced by plaintiff. In view of the testimony above recited the court finds the verdict not so excessive as to warrant setting it aside or granting a new trial.

Each of defendant's motions respecting the verdict and judgment of $100,000 must be denied.

### Interest

July 17, 1939, the jury in this case rendered a verdict in favor of plaintiff in the amount of $100,000 and three days thereafter judgment for that sum was entered. July 26, 1939, plaintiff moved that said judgment be corrected so as to include interest in the sum of $60,821.92, computed at 6% per annum from the date of the institution of suit, June 1, 1929, to the date of the entry of the judgment.

■■■ Plaintiff's motion for the recovery and inclusion of interest was made under Section 480 of the Civil Practice Act of the State of New York. The jurisdiction of the court to grant the relief prayed and the timeliness of the motion are recognized by Rules 54(c) and 60(a) of the Federal Rules of Civil Procedure.

Section 480 provides: "In every action wherein any sum of money shall be awarded by verdict, report or decision upon a cause of action for the enforcement of or based upon breach of performance of a contract, express or implied, interest shall be recovered upon the principal sum whether theretofore liquidated or unliquidated and shall be added to and be a part of the total sum awarded."

Rule 54(c) provides: "* * * every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

432

Rule 60(a) provides: "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders."

■ This license agreement was negotiated, executed and delivered by the parties in New York. Under the provisions of the contract the plaintiff in New York transferred to defendant its entire business as a going concern, including unfilled orders and outstanding receivables, which business the plaintiff was then conducting in New York; and transferred to defendant all of its tangible property, the same being located in New York. Defendant thereupon commenced performance under the contract as provided therein at the premises formerly occupied by plaintiff at 68 Hunters Point Avenue, Long Island City, New York. Payment of the purchase price as provided in the contract was made to plaintiff in New York. Further payments from time to time throughout the term of the contract were made to plaintiff in New York. The license agreement in suit is a New York contract.

Defendant in its answer admits "that the instrument of writing of May 20, 1918, was made in the State of New York." The rights of the parties are therefore governed by New York law.

The question before the court is whether the plaintiff having recovered a verdict for breach of the license agreement is entitled as a matter of right to interest on the amount of the verdict pursuant to the New York statute.

■ The answer to this question must be found in the New York cases construing Section 480 of the New York Civil Practice Act. These cases hold the statute gives an absolute right as a matter of law to interest as a part of the damages for breach of contract, whether the damages were liquidated or unliquidated. The addition of interest is mandatory. Interest is not required to be a part of the verdict but is computed and added by the court to the principal sum awarded by the verdict. In the absence of proof of a fixed date of breach, interest is computed and added from the date of commencement of the action. Manufacturers Trust Co. v. Gray, 278 N.Y. 380, 387, 16 N.E.2d 373, 117 A.L.R. 1176; McLaughlin v. Brinckerhoff, 222 App.Div. 458, 226 N.Y.S. 623;

Quinn v. Sigretto, 229 App.Div. 727, 241 N.Y.S. 835; Freedman v. Hart & Early Co., 162 Misc. 487, 293 N.Y.S. 525; Aronowsky v. Goldberger-Raabin Co., 250 App. Div. 731, 293 N.Y.S. 527; United States v. Stephanidis, D.C., 41 F.2d 960. In such a case as this the New York rule as to interest prevails.

■ Defendant contends, "By not requesting an instruction as to interest, plaintiff waived any claim thereto." Such is not the New York law. Plaintiff being entitled to interest as matter of law there was no issue of fact as to interest to be submitted to the jury.

No case has been cited by plaintiff where section 480 of the Civil Practice Act of New York has been applied to include recovery of interest for delay in an action on a New York contract brought in a district outside of New York. Presumably there is no such reported case. However, the cases cited set forth the rules of law controlling this case.

Suit was brought in Minnesota. The accident occurred in Montana. Holding that damages were controlled by the law of Minnesota, the Supreme Court declared:

"The question which those assignments of errors present is, was the amount of damage to be controlled by the law of the place of employment and where the accident occurred, or by the law of the forum in which the suit was pending? In the case of Herrick v. Minneapolis & St. Louis Railway Company, reported in 31 Minn. 11, 16 N.W. 413 [47 Am.Rep. 771], which involved the question of whether the courts of Minnesota would enforce and apply to a suit in that state, for a cause of action originating in Iowa, a law of the state of Iowa making railroad corporations liable for damages sustained by its employees in consequence of the neglect of fellow servants, the court said:

"'The statute of another state has, of course, no extraterritorial force, but rights acquired under it will always, in comity, be enforced, if not against the public policy of the laws of the former. In such cases the law of the place where the right was acquired, or the liability was incurred, will govern as to the right of action; while all that pertains merely to the remedy will be controlled by the law of the state where the action is brought. And we think the principle is the same whether the right of action be ex contractu or ex delicto.' * * *

"The contract of employment was made in Montana, and the accident occurred in that state, while the suit was brought in Minnesota. We think there was no error in holding that the right to recover. was governed by the lex loci, and· not by the lex fori." Northern Pacific Railroad Co. v. Babcock, 154 U.S. 190, 197, 14 S.Ct. 978, 980, 38 L.Ed. 958.

Suit was brought in Maryland. The contract was made in Missouri. Damages were unliquidated. The trial court refused to allow interest from the institution of the suit because under the law of the forum interest was not compulsory. The Circuit Court of Appeals reversed this finding:

"This brings us to the last objection made by the bridge company touching the disallowance of interest. While it is true this cause was trial [tried] in Maryland, where by statute the allowance of interest is left to the discretion of the court, yet it is also true that this contract was a Missouri one. The statute of this latter state (section 3705, c. 40, Rev.St.Mo.1899 [Mo.St.Ann. § 2839, p. 4623]), provides:

" 'Creditors shall be allowed to receive interest at the rate of six per centum per annum when no other rate is agreed upon for all moneys after they become due and payable on written contracts and on accounts after they become due and demand of payment is made.'

"The Supreme Court of Missouri in construing this statute has held that such interest will not be allowed on account until after demand is made. Evans v. Western Brass Mfg. Co., 118 Mo. 548,·24 S.W. 175; Southgate v. Atlantic & P. R. R. Co., 61 Mo. 89. But it has further held that the institution of suit constitutes such demand, and in case no prior demand has been proven, then interest should be awarded from the date of service of process, or, in the absence of proof of date of service, from the commencement of the suit. Dempsey v. Schawacker, 140 Mo. 680, 38 S.W. 954, 41 S.W. 1100. The controversy arose in Maryland only by reason of the accidental location of the attached funds there of the railroad company. By the finding of the trial court, an aggregate of $38,406.43 remained unpaid, and suit to recover it had been instituted on September 12, 1904, nearly 17 months before judgment rendered. We think the bridge company clearly was entitled to interest for this period, both under the Missouri statute and

the federal authorities." Freygang v. Vera Cruz & P. R. Co., 4 Cir., 154 Fed. 640, 646.

Suit was brought in Oklahoma. The contract was made in Texas where interest was allowable. The court said:

"Whether the action be regarded as one in tort for conversion or upon an implied contract, the measure of damages is to be determined by the law of Texas. The measure of damages in' an action for tort as determined by the law of the place of the wrong; and in an action on a contract by the law of the place of the contract.

"Under·the law of Texas the measure of damages, whether the action be for a wrongful conversion or for the value of the property converted upon the promise which the law implies from the conversion, is the reasonable value of the property at the time ɵf the conversion, measured by the market value thereof if it has a market value at the time of the conversion, with interest from the date of the conversion." Wynne v. McCarthy, 10 Cir., 97 F.2d 964, 970.

A death action was brought and tried in New York. The death occurred in Ontario, Canada. There was a verdict for the plaintiff. Following the New York statute governing damages in death actions, the court below added interest from the date of the death to the amount of the verdict and entered judgment for the aggregate of those two amounts. Upon appeal the question was whether the right to interest was governed by the law of the place of accident or by the law of the place of trial. The Appellate Division held that interest is of the substance and not of the remedy and modified the judgment by striking therefrom the item of interest. Kiefer v. Grand Trunk Ry. Co., 12 App.Div. 28, 42 N.Y.S. 171, affirmed 153 N.Y. 688, 48 N.E. 1105.

In the later case of Loucks v. Standard Oil Co., 224 N.Y. 99, 109, 120 N.E. 198, 201, Judge Cardozo referred to the above case in the following language: "In Kiefer v. Grand Trunk Ry. Co., supra, the death occurred in Canada. Canada has a statute similar to our own. The chief variance is in the award of interest. * * We held that interest had relation to the substance of the right, and must be governed by the foreign statute."

Suit was brought in Pennsylvania for a tort occurring in Virginia. The Court of Appeals of this circuit held the Virginia

statute governed as to all substantive rights including the right to damages: "The heart of the matter is that the law of the place of a tort gives a 'right of action' to one falling within its terms; and it does so without regard to the residence of the tort-feasor. In such case 'the law of the place where the right of action was acquired or the liability was incurred will govern as to the right of action,' * * * and as to the measure of damages, * * * 'while all that pertains merely to the remedy will be controlled by the law of the state where the action is brought,' * * *." Curtis v. Campbell, 3 Cir., 76 F.2d 84, 85.

This court has followed the law as laid down above. Suit was brought upon a contractor's bond executed in North Carolina. The North Carolina statute provided for interest for breach of a contract but expressly excluded interest upon a penal bond. Following the provisions of the North Carolina statute this court disallowed interest: "The United States, however, seeks to recover, not only the penalty of the bond, but also damages in excess of the penalty for its detention, the measure of such damages to be the interest on the amount due from the time it should have been paid to the date of judgment. Whether in any case judgment in favor of the obligee in a penal bond may exceed the penalty has been the subject of 'much contrariety of opinion,' but, while considering the question of the amount of recovery upon a contractor's bond similar in substance and purpose to the one here under consideration, the Supreme Court in Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 381, 37 S.Ct. 614, 617 (61 L.Ed. 1206), laid down a rule which, in my opinion, controls the decision in this case. It said: 'The contract and bond were made in Illinois and were to be performed there. Questions of liability for interest must therefore be determined by the law of that state.'" United States v. Garland, D.C., 271 F. 14, 15.

Defendant relies principally upon the case of Preston Co. v. Funkhouser, 261 N.Y. 140, 184 N.E. 737, 87 A.L.R. 459; Funkhouser v. J. B. Preston Co., 290 U.S. 163, 54 S.Ct. 134, 78 L.Ed. 243. In its brief defendant states: "This decision was predicated solely on the ground that section 480 related to matters of procedure and remedy and *hence* disturbed no contractual obligations. The Chief Justice said at page 167 [of 290 U.S., 54 S.Ct. at page 135, 78 L.Ed. 243]: '* * * The statute in question concerns the remedy * * *.'"

The vice of defendant's entire argument arises from its deductions from this incomplete quotation. What the Chief Justice said was: "The statute in question concerns the remedy *and* does not disturb the obligations of the contract." It should be noted that defendant has substituted the word "hence" for the conjunction "and" used by the Chief Justice.

Defendant argues that by the language above quoted the Supreme Court held that section 480 "related to matters of procedure and remedy", and since section 480 deals with the allowance of interest, therefore the Supreme Court held that interest is only a matter of procedure or remedy. Defendant further argues that all matters of procedure and remedy are governed by the law of the forum. Therefore, it concludes the Supreme Court held that the right to interest is governed by the law of the forum and not by the law of the place of the contract.

As applied to this case the whole argument is unsound. Preston Co. v. Funkhouser was a suit for damages for breach of a contract. The contract was entered into before the enactment of section 480. The damages were unliquidated. There was no provision in the contract for interest. If interest was to be recovered, it was interest on account of delay. The verdict was for $45,889.70. Under section 480 the court added interest of $14,417.51. The question in the case was not whether section 480 goes to the remedy but whether it impaired the obligation of the contract.

The test of constitutionality is the simple one of finding whether by the statute existing contractual rights are diminished or existing obligations increased. The rule is that any statute imposing conditions not expressed in the contract or dispensing with those which are, would be a statute impairing the obligation of a contract.

"There is a broad distinction between laws impairing the obligation of contracts and those which simply undertake to give a more efficient remedy to enforce a contract already made." Bernheimer v. Converse, 206 U.S. 516, 530, 27 S.Ct. 755, 759, 51 L.Ed. 1163.

The Supreme Court recognized an obligation to pay interest before the passage of Section 480. It declared the section was

to give a more efficient remedy for the enforcement of an obligation. Damages themselves are but a remedy. Parties do not contract for breach. They contract for performance. Should breach occur the law gives a remedy, to wit; damages. The Supreme Court declared: "The mere fact that such legislation is retroactive does not bring it into conflict with the guarantees of the Federal Constitution * * * and when the action of the Legislature is directed to the enforcement of the obligations assumed by the parties and to the giving of suitable relief for nonperformance, it cannot be said that the obligations of the contract had been impaired. The parties make their contract with reference to the existence of the power of the state to provide remedies for enforcement and to secure adequate redress in case of breach". Funkhouser v. J. B. Preston Co., 290 U.S. 163, 167, 54 S.Ct. 134; 136, 78 L. Ed. 243.

The Supreme Court was dealing with a constitutional question. Therefore the remark of the Chief·Justice that the statute concerns the remedy and did not disturb or impair the obligation of the contract has no application to the case in hand.

Plaintiff's motion that the judgment of $100,000 be corrected so as to include interest of $60,821.92 must be granted.