UNITED STATES, for Use and Benefit of LICHTER et al. v. HENKE CONST. CO. et al.

No. 74.

District Court, W. D. Missouri, S. D.

Jan. 5, 1945.

On Motions With Respect to Findings of Fact and Conclusions of Law Jan. 9, 1945.
Motion to Quash Execution Sustained Oct. 19, 1946.

See 68 F.Supp. 3.

124

Mann & Mann, of Springfield, Mo., for plaintiffs.

Farrington & Curtis, of Springfield, Mo., for defendants.

REEVES, District Judge.

This is an action prosecuted by the plaintiffs as authorized by Section 270a(b), Title 40 U.S.C.A. Section 270a(a) (2) makes provision·for a "payment bond" by contractors engaged in building or construction work for the government and the provisions for such payment bond operate for the "protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person."

On August 13, 1938, the defendant Henke Construction Company entered into a written contract with the government for the construction of specified additions to the United States Medical Center owned and operated by the United States at Springfield, Missouri. Pursuant to this formal contract and after full negotiations the plaintiffs contracted with the said defendant to take over and perform a substantial portion of said work. Such contract was evidenced by writing and bore date November 2, 1938. The plaintiffs agreed to:

"* * * furnish all Labor and Materials, including all necessary attachments, tools and equipment, transportation, scaffolding, permits, fees, taxes, insurance, deposits, and otherwise, to fully construct, perform, and in every respect complete all

work and furnish all materials specified on the Rider Sheet, Page No. 5 of this contract. This sub-contract agreement is * * * for the construction of U. S. Hospital for Defective Delinquents, Constitutional Psychopaths Group and Three (3) Staff Houses, Springfield, Missouri for the Procurement Div., Treasury Dept., Washington, D. C. and subject to all provisions and terms of Contract No. T1PB 4031 * * * dated August 18(13) 1938; * * *."

It is claimed by the plaintiffs that they performed all the obligations of their contract but that, by reason of changes and substitutions in the work agreed to be done by them, additional labor and material were required and extras either furnished or performed, or both, and because thereof they were entitled to considerable additional compensation over the amount specified in their contract. Moreover, they assert that by omissions and commissions in the way of negligent acts of the defendant such extras were imposed upon them to their damage. Furthermore, they aver by an amendment to their complaint that they took over and assumed a contract or agreement with the Lusco Brick & Stone Company entered into by the defendant Construction Company and that the terms of such assumed agreement were violated by the said defendant to their damage. The plaintiffs, therefore, sue for such extras in the way of labor and material made necessary in the execution of their contract and for any balance remaining unpaid on the original contract, the consideration whereof being $51,000.

The defendants admit the truth of several averments of the complaint or amendments thereto. This includes admission that certain extras, alterations or substitutions were authorized in writing and that defendant construction company became liable therefor. The defendants deny liability, however, on the ground that failure of the plaintiffs to complete their contracts within the time specified caused damages to accrue to defendant construction company far in excess of any balance that might be due plaintiffs. Accordingly the defendants pray judgment against the plaintiffs.

The issues raised by both the pleadings and the evidence are largely, if not totally, factual. Few, if any, important legal questions have been injected into the case whether pertaining to substantive or adjective law.

1. At the outset it is important to determine what the precise contractual relations were between the parties.

The plaintiffs agreed to perform the work undertaken by them "subject to all provisions and terms of Contract" between defendant Henke Construction Company, a corporation and the Government, dated August 13, 1938. An inspection of this contract reveals that by written order "and without notice to the sureties," changes might be made in the drawings or specifications subject to certain limitations.

By Article 5 of such agreement, the subject of "Extras" is treated as follows:

"Except as otherwise herein provided, no charge for any extra work or material will be allowed unless the same has been ordered in writing by the contracting officer and the price stated in such order."

By Article 15 the subject of "Disputes" is discussed. The matter of factual questions in dispute "shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto."

By the "Seventh" paragraph of the contract between plaintiffs and the defendant Henke Construction Company the subject of extras was treated as follows:

"No extra work or changes under this contract will be recognized or paid for, unless agreed to in writing before the work is done or the changes made; in which event the change shall be specified in detail as to extra work or changes desired, the price to be paid or the amount to be deducted should said change decrease the amount to be paid hereunder."

The foregoing pertinently defines the rights of the parties as affected by the controversy here. It should be noted that the original contract was "brought into the

126

subcontract" conformable to the suggestion made in Guerini Stone Co. v. Carlin, 240 U.S. 264, loc. cit. 277, and the same case in 248 U.S. 334, loc. cit. 341, and plaintiffs are bound by the terms of the contract. Ruemmeli-Dawley Mfg. Co. v. May Department Stores Co., 231 S.W. 1031.

2. It is unnecessary to discuss Item 1 of plaintiff's bill of particulars in the sum of $48.60 for the reason that the amount thereof is acknowledged by the defendant Henke Construction Company to be due plaintiffs.

■ Item 2 requires but brief discussion. The government required changes from salt glazed tile as specified in the original contract to ceramic glazed tile. This was more expensive tile and Henke Construction Company agreed to pay the difference in the cost thereof. The net increase in the cost as appears from the evidence and admitted by the plaintiffs was $4,399.40. This was $7.01 in excess of the amount agreed to by said Construction Company. Such a net difference in costs should not be augmented by the 10% overhead and 10% profit insisted on by the plaintiffs. Quite clearly the agreement did not contemplate these additional charges, and Fuhler v. Goham & Levine Const. Co., 142 S.W.2d 482 would not apply.

In like manner Item 3 of the bill of particulars is not the subject of much dispute on important facts. The defendant Henke Construction Company seeks to limit its liability to $50. The proof would justify an allowance of $101.14.

3. Item 4 of plaintiffs' bill of particulars covers the matter of extra expenses and labor because the concrete walls over which the plaintiffs contracted to build a brick veneer were out of plumb. There was a small space on Unit A that was accounted for because of the slipping of a form for the concrete. The evidence showed that plaintiffs probably experienced an extra cost for material and labor in the sum of $144.88.

■ The question naturally arises whether because of this condition, in the light of the contract, plaintiffs would be entitled to press a claim for extras. As heretofore pointed out, the contract specifi-cally provided that neither extra work nor changes would be recognized or paid for "unless agreed to in writing before the work is done or the changes made." This was the voluntary agreement between the parties and it seems reasonable that when this defect, if it were such, was encountered by the plaintiffs, the attention of the defendant Henke Construction Company should have been called to the matter and an adjustment then and there made. It is the contention of the defendant Henke Construction Company that the defect was not extreme and was such as is liable to confront every builder and contractor in doing similar work—that there are conditions in every similar job which call for tolerance and that such may be anticipated and provided for in the original contract. In the light of the contract it does not seem reasonable to permit the plaintiffs to exact a charge so completely at variance with their written undertaking.

4. Item 5 of plaintiffs' bill of particulars involves an extensive controversy with respect to the installation of brick, whether facing brick or otherwise. Plaintiffs seek a total of $19,158.07. This figure was somewhat reduced by the proof. In the light of the facts and the conclusion reached it is unnecessary to undertake to reconcile the difference between the amount claimed and the proof.

The plaintiffs by an amendment to the complaint said that they assumed a contract made by the defendant Henke Construction Company to purchase its brick from Lusco Brick & Stone Company. The brick had been approved by the Government. The size of the brick was specified in the contract taken over by plaintiffs. Each brick was to run, with a certain permissible tolerance, $2\frac{1}{4}$ inches in thickness, $3\frac{3}{4}$ inches in width, and 8 inches in length. At the same time the plaintiffs assumed a contract made by the defendant Henke Construction Company with said Lusco Brick & Stone Company for salt glazed tile.

Substantially, it is the contention of the plaintiffs that the brick furnished under the above mentioned contract did not conform to the size specified but were too

large and that the defendant Henke Construction Company declined to permit the repudiation of the contract and in effect compelled plaintiffs to use over-size brick and at the same time would not permit an adjustment on the specifications so as to meet such condition.

Admittedly the Lusco Brick & Stone Company had contracted to furnish brick of certain size. The plaintiffs had assumed the contract and it was clearly within their right to compel the Lusco Brick & Stone Company to conform to the contract. When the question was presented, careful inspections and tests were made of the bricks shipped, and it appeared conclusively, with negligible exceptions, that the brick agreed to be furnished by Lusco Brick & Stone Company conformed to its contract and that the plaintiffs were not put to extra expense for material or labor by reason of using over-size brick. Moreover, the plaintiffs could not compel the defendant Henke Construction Company to accept another brick contract and to procure the approval of the brick to be supplied by another company. According to the overwhelming proof there was no occasion for the rejection of the Lusco contract and the presentation of a brick produced by another company for the approval of the Government. An inspection of the work after the contract had been completed confirms the insistence of the defendant Henke Construction Company that the bricks furnished met the specifications of the contract.

This also meets the charge that the defendant Henke Construction Company refused to allow a modification of the coursing so as to adjust to the larger sized brick. This the Government had declined to permit and, furthermore, there was no occasion for such adjustment. The evidence was that the concrete wall, save as above mentioned, was not out of plumb to the extent contended by the plaintiffs, nor was it outside of the scope of what is termed as an ordinary job condition.

5. The alleged oral contract between the plaintiffs and the defendant Henke Construction Company as having been made concurrently with the execution of the written contract should not be construed to mean more than that the plaintiffs assumed the contract obligation of Henke Construction Company to Lusco Brick & Stone Company. Other portions of the alleged oral agreement are in conflict with the written contract and cannot prevail.

6. The next matter in the bill of particulars filed by plaintiffs is Item 6, for additional labor and materials required in connection with the installation of the glazed tile "by reason of the refusal on the part of the United States Government and the Defendant Henke Construction Company to consider, approve and act upon certain shop drawing of special glazed tile prepared and submitted by the complainants herein for approval * * *." The plaintiffs further complain that the concrete work on which the tile was to be placed was "negligently, carelessly and improperly installed by or at the direction of the defendant Henke Construction Company."

This action must be treated as one upon contract. Blair v. Corby, 37 Mo. 314, loc. cit. 317. Under such contract it is not allowable for the plaintiffs to complete their contract and then sue for damages arising either from conditions or matters occurring in the progress of the work. As in other cases, if a dispute arose, the original contract (fully incorporated into the contract with the plaintiffs) provided for the adjustment of disputes and controversies so that the work might go forward. 17 C.J.S. Contracts, Sec. 497, p. 1013; Coil v. Ins. Co., 65 Mo. App. 247. Plaintiffs could not disregard the express terms of their contract in claiming extras as in this case.

7. The defendant Henke Construction Company has interposed a counterclaim upon the ground that the plaintiffs unduly delayed the completion of the job. The contract of plaintiffs provided for the completion of their undertaking on or before August 1, 1939. They did not finish their work until December 1, 1939. There was, therefore, a delay of four months. The contract provided for liquidated damages at the rate of $100 per day. The de-

128

fendant Henke Construction Company supplements this item with an additional claim for damages arising from the alleged failure of the plaintiffs to carry out their agreement "in a workmanlike manner." The said defendant, therefore, claims damages in the sum of $42,885.20.

The various items claimed by defendant Henke Construction Company are incorporated in its bill of particulars, the liquidated damages being fixed at $23,100 for 231 calender days.

It is not necessary to go into detail with respect to the evidence on the counterclaim of the defendant Henke Construction Company. While it appears from the evidence that the plaintiffs lost time in useless and unjustified controversies, yet they completed their work, it was accepted by the Government, and the defendant Henke Construction Company was not required to respond in damages to the government for the delay. St. Louis to use of Carroll-Porter, etc., v. Parker-Washington Co., 271 Mo. 229, 196 S.W. 767.

Moreover, the Government accepted and approved plaintiffs' work as having been done in a workmanlike manner. The evidence was neither substantial nor by any means conclusive that the defendant Henke Construction Company had suffered any loss from delay other than that usually attendant upon such undertakings. In every case, from the after-light, it can be seen where the work could and should have been expedited.

8. Admittedly, the original contract was for $51,000 and it is conceded that extras as hereinbefore stated were authorized by the defendant Henke Construction Company. Plaintiffs completed their contract and were entitled to full settlement including the authorized extras. The defendant Henke Construction Company has paid plaintiffs $36,361. The balance of $51,000 on the original contract, being $14,639, became due on or about January 1, 1940. By the contract the extras hereinbefore mentioned as having been authorized also became due and payable at the same time. The defendant, the said Henke Construction Company, properly states that the contract was made in Illinois but to be executed in Missouri. The allowable rate of interest in Illinois is 5%. It is the contention of the Henke Construction Company that the plaintiffs are not entitled to interest on their demands. The Illinois statute has been examined. It provides properly that, in cases of unliquidated accounts, interest cannot be computed. Such is not the case here. There became due the plaintiffs an acknowledged balance on their contract, plus small extras, on January 1, 1940. They were entitled to interest on this amount until judgment. The said defendant seeks to offset this with a counterclaim. The interposition of a counterclaim would not stop the running of interest on an admitted debt. Since the defendant does not appear to be entitled to its counterclaim, then plaintiffs should have their principal, with interest computed at the rate stated, from January 1, 1940, and same should be incorporated in the judgment.

9. Many matters discussed by able counsel for the parties have been omitted from this opinion. The questions were examined and authorities checked but they did not appear to be essential in the decision.

The plumb bond matter was clearly settled by the contract and the ruling made by the Government agents. Moreover, plaintiffs were familiar with the specifications and knew the necessity of maintaining a plumb bond in placing the brick.

In Contracting Company v. Construction Company, 162 Mo.App. 12, 141 S.W. 915, the plaintiff was compelled to do work which the defendant had specifically agreed to do. The claim for extras was justified under the contract. Neither could plaintiffs properly contend that they did more than their contract obliged them to do, as in the following cases: Shephard v. St. Charles Western Plank Road Co., 28 Mo. 373; Blair v. Corby, 37 Mo. 314; Davis v. Com. of Sewerage, 13 Fed.Supp. 672, where the contractor did more than the plain terms of the contract required.

In this case plaintiffs knew precisely what they were required to do and did no more than provided in the contract or au-

thorized by special arrangement with the defendant Henke Construction Company.

There is appended hereto the following Findings of Fact and statement of Conclusions of Law:

### Findings of Fact.

(1) The defendant Henke Construction Company had a contract with the United States Government, dated August 13, 1938, for the construction of a group of seven buildings designated as Units A to G to be built as additions to the U. S. Medical Center at Springfield, Missouri.

(2) By a contract dated November 2, 1938, the plaintiffs agreed with the defendant Henke Construction Company to furnish the necessary materials and to do the brick and tile work in connection with the construction of certain parts of these additional buildings. There was incorporated into this contract agreeable provisions of the contract between the Government and Henke Construction Company dated August 13, 1938.

(3) For the work which the plaintiffs contracted to do the defendant Henke Construction Company agreed to pay $51,000. Said defendant has paid plaintiffs $36,361. Defendant Henke Construction Company admits a balance due under the contract of $14,639.

(4) Henke Construction Company admits that it is liable to the plaintiffs in the sum of $48.60 for extra material and labor for the installation of clay tile partitions in certain janitor's closets as set out in Item 1 of plaintiffs' bill of particulars. This work was done in accordance with the written authorization of the defendant Henke Construction Company.

(5) Plaintiffs expended beyond the terms of the contract the sum of $4,399.40 as the difference in price between salt glazed tile and ceramic glazed tile, the use of the latter and the additional expense having been authorized in writing by Henke Construction Company as an extra beyond and in addition to the original contract.

(6) Henke Construction Company admits liability under Item 3 of plaintiffs' bill of particulars in an amount not to exceed $50.

(7) Because of a variance from the plans in the height of the door or the height of the ceiling on the second floor of Unit D the plaintiffs had to perform extra labor in addition to that called for by the plans for the cutting of bullnose caps in the amount of $101.14 (as set forth in Item 3 of plaintiffs' bill of particulars).

(8) Plaintiffs had to expend for extra and additional labor and material the sum of $144.88 as costs incurred because the concrete wall was out of plumb at Unit A (as set forth in Item 4 of plaintiffs' bill of particulars) more than is customary in construction work of this type, it being due to some of the forms slipping.

(9) Any additional labor and materials which may have been required of the plaintiffs in furnishing and installing the brick work (as set forth in Item 5 of plaintiffs' bill of particulars) was *not* "agreed to in writing before the work was done" as was required in the contract between plaintiffs and defendant Henke Construction Company, and has never been agreed to by said defendant as an extra and additional expense, either orally or in writing.

(10) The plaintiffs and their agents knew and orally agreed that, if they received the contract to do the brick work, they would take over and assume the defendant Henke Construction Company's prior agreement for the purchase of the brick and cement and tile necessary for this work from the Lusco Brick & Stone Co., and they knew the details of this agreement including the prices to be paid and the types of material to be bought. This was one of the conditions under which the parties dealt.

(11) Some of the brick purchased by the plaintiffs from the Lusco Brick & Stone Company exceeded the thickness called for in the specifications by more than the variance allowed by the specifications (that is, exceeded 2¼ inches by more than 1/16th inch), but most of the brick did not, so that most of the brick averaged 2¼ inches in thickness. The majority of the brick actually received by the plaintiffs under the purchase order did not vary on an average beyond the allowable tolerance in thickness from "the standard size of brick as estab-

lished by simplified practice." The horizontal joints in the brick work did not exceed on the average the measurement called for by the specifications by any appreciable amount. The laying of whatever brick were oversize took only a very small amount of extra time and labor (if any). No accurate estimate of how much time and labor was necessary during the whole job (if any) appears in the evidence nor is there any means shown by which it may be calculated.

(12) Except for the place in the wall of Unit A named in Item 4 of plaintiffs' bill of particulars, the concrete walls of the units against which the brick veneer was laid did not vary from plumb more and was no more irregular than may customarily be and is expected by the members of the trade in this type of construction work. (There were some slight imperfections and some slight variances from plumb.)

Except for one place in Unit C where it was at least ½ inch higher than called for, the water table on each of the units was not any higher or lower than called for by the specifications than would be expected by members of the trade in this type of construction work. (There were some slight variations and the water tables were "wavy" in some places.)

(13) The progress schedule of the defendant Henke Construction Company for its construction contract called for the interior tile work to begin on December 5, 1938, and to be completed by February 22, 1939. The government agency or agent did not approve the salt glazed tile for color until February 9, 1939, of which the plaintiffs received prompt notice on February 11, 1939, and did not approve the ceramic glazed tile for color until May 5, 1939, of which the plaintiffs received immediate notice. By mutual agreement between the plaintiffs and said defendant the contract to supply all the tile first held by Lusco Brick & Stone Company was cancelled on or about March 4, 1939, and was re-let by the defendant Henke Construction Company for the plaintiffs to the Stark Brick Company, on or before May 8, 1939.

Plaintiffs placed an order with the Stark Brick Company for salt glazed tile on April 10, 1939 (plaintiffs had previously communicated with Stark in regard to purchase of the tile and making setting drawings), and for ceramic tile on May 16, 1939. The first car of tile arrived on the job on June 19, 1939, and the first tile was laid on July 19, 1939. After July 19, 1939, the only delay in the tile work was that occasioned by the "specials."

On or about June 15, 1939, shop or setting drawings were supplied plaintiffs by the Stark Brick Company or their agents and the plaintiffs corrected them and sent a copy to Henke Construction Company. On June 30, 1939, said company notified plaintiffs that the government agency or agent had refused to approve or disapprove the drawings on the ground that the specifications did not require such action. Neither did the defendant Henke Construction Company approve or disapprove these setting drawings. "Early in July" plaintiffs knew that the Government had ruled out the "bullnose caps" which plaintiffs' drawings called for. Again, on August 16, 1939, the Government engineer on the job ruled out the use of these tile. Again, on August 28, 1939, the Government engineer on the job made the same ruling. Again on August 31, 1939, plaintiffs received notice from Washington that these "caps" couldn't be used.

Plaintiffs believed that their contract with the defendant Henke Construction Company required them (plaintiffs) to furnish the shop or setting drawings. Plaintiffs believed that the specifications did not specifically state that no glazed tile should be set until the setting drawings had been approved.

(14) The term "bullnose" is a general term which is applied to a number of different types of special ceramic glazed tile. It refers only to the shape of the tile and may be used to refer to various similar shapes of different sizes. The exact definition of the term is not settled among the members of the trade. In addition to a shape which may differentiate a tile as being a "bullnose" the same tile may also have other characteristics which give it other names and uses known to the trade.

(15) By the defendant Henke Construction Company's letter of August 3, 1939, the plaintiffs were authorized to use what they term "bullnose caps" in the shower rooms only. This letter was written by A. Nordstrand at the direction of said defendant and after consultation with the Government construction engineer on the job.

(16) Except for the place in Unit D named in Item 3 of plaintiffs' bill of particulars the ceilings varied from the horizontal level plane only to a small extent, not exceeding ½ inch, and this was not a general condition throughout but only occurred in occasional instances. Sometimes such a condition was remedied by "holding down" on the joints and occasionally it was remedied by sawing some of the tile in the top course. Such occasional adjustment of the coursing or cutting of tile caused by slight imperfections in the cement work is considered by the trade as a condition to be expected on every job of this nature.

(17) By consulting the plans and specifications a competent tile contractor, or engineer, or architect, or tile manufacturer could have made shop or setting drawings for this tile work and could have determined the number and shape or type of all the tile called for therein. Preparation of these setting drawings did not need to await the government's approval of the tile for color nor did it need await the placing of a purchase order for the tile required. Shapes of most of the "special" types of glazed tile and the numbers therefor are standardized throughout the industry. Plaintiffs believed that the specifications called for setting drawings for the glazed tile but they also knew that the specifications provided that, if drawings were submitted to the government but were not required by the specifications, they would be returned without action.

(18) Plaintiffs repeatedly sought to use their exhibit 182 which is designated a S–40–M tile as a "cap" throughout the first floor and it was repeatedly rejected by the government engineer. Plaintiffs contended the plans called for a coursing which required a 2½ inch "cap" on the first floor.

Plaintiffs' setting drawings called for a D–40 type "cap" on the second floor. These were acceptable to Henke Construction Company and to the government. Plaintiffs also knew that a D–40 "cap" could have been secured in a 2½ inch height (although usually a 5x8 tile) if ordered soon enough. Plaintiffs' exhibit 180 fulfilled the qualifications of the "cap" called for by the specifications, according to the defendant Henke Construction Company and the government engineer.

(19) In laying the interior tile the masons were required to leave out a number of the "specials" and go back and put them in later because they had not yet been delivered to the job. Because of this it took more time and labor than it would otherwise have to complete the laying of the interior tile.

(20) The plaintiffs' masons wiped down the glazed tile as the work progressed in accordance with the usual practice in the trade and in accordance with the terms of the contract between plaintiffs and defendant Henke Construction Company.

(21) The controversy over the plumb bond began about December 1, 1938, and ended on or about February 27, 1939. The plaintiffs knew when placing their bid that plumb bond was required throughout and would necessitate some cutting around the windows. Some time in December, 1938, or January 1939, plaintiffs were advised that the government engineer on the job had ruled against changing the specifications so as to "jump the bond." This controversy had been settled before any brick had been delivered to the job and before the brick work started.

(22) On November 28, 1938, the plaintiffs placed an order with the Lusco Brick & Stone Company for all the Utica cement required for the job. This was in accordance with the agreement between the plaintiffs and the defendant Henke Construction Company and at the instance of the said defendant. Portland cement was approved at all times for all purposes on this job but the defendant Henke Construction Company requested and plaintiffs agreed that Utica cement be used if approval could be obtained. The government had pre-

viously, on October 18, 1938, approved the use of Utica cement for this job. By agreement of the parties a truckload of Utica cement was delivered at the job site. Sample from this load was rejected by the government on or about February 14, 1939. There were no brick to be used under plaintiff's contract on the job site at this time and bricklaying by the plaintiff did not start until on or about March 8, 1939. The plaintiff believed that it was his obligation to have some Utica cement delivered to the job site so that the government could take a field sample.

(23) *Selected* common brick to be used for the brick veneer facing of the walls of the units was approved by the government on January 19, 1939. Plaintiffs were notified on January 21, 1939. Plaintiffs had been notified on January 3, 1939, by defendant Henke Construction Company to start laying brick on January 16, 1939. Bricklaying started on March 8, 1939. Brick work could have started approximately one week after the concrete work was completed on a building unit. The concrete work on Unit D was completed January 26, 1939; on Unit C on or about February 27, 1939; on Unit B on or about March 2, 1939; on Unit A on or about April 4, 1939; on Unit G on or about May 12, 1939; on Unit F on or about June 15, 1939; on Unit E on or about June 20, 1939. The brick work was completed on or by July 25, 1939. The concrete for the brick yard wall was prepared by October 23, 1939 and brick work on it was finished on October 29, 1939.

(24) Salt glazed tile was approved on or about February 9, 1939. Ceramic tile was approved on or about May 8, 1939. The first tile was laid on July 19, 1939. Tile laying of salt glazed tile could have begun on or about April 7, 1939 in Unit C and in the toilet and shower rooms of Units D, B and A. The tile work was completed on or about November 28, 1939. The delay in the tile work did not hold up final inspection and acceptance by the government. Final inspection did not begin until after December 7, 1939, because certain light fixtures were not completely installed until then.

(25) Plaintiffs' material was removed from the court yard by October 16, 1939, the material consisting of tile and scaffolding.

Conclusions of Law.

I. The plaintiffs are entitled to recover for the extras, whether in labor or materials, as authorized by the defendant Henke Construction Company conformable to the contract.

II. The plaintiffs are not entitled to recover for extras, whether of labor or material, save in those cases where authorized by the defendant Henke Construction Company, conformable to the contract.

III. The plaintiffs are entitled to recover, in part, claims 1, 2 and 3 of their bill of particulars, as authorized by the defendant Henke Construction Company in writing. The plaintiffs are not entitled to recover on their claims 4, 5 and 6 of their bill of particulars because not authorized under the contract.

IV. The defendant Henke Construction Company is not entitled to recover on its counterclaim.

V. The contract sued on fixes the substantive rights of the parties under the laws of the State of Illinois.

VI. Plaintiffs are entitled to interest on the amount due them at the rate of 5% from and after January 1, 1940.

On Motions with Respect to Findings of Fact and Conclusions of Law.

The memorandum opinion in the above case was prepared September last. At the same time there was appended to the memorandum proposed findings of fact and a statement of conclusions of law. The memorandum opinion was not filed; neither were the findings of fact and the statement of legal conclusions. All were submitted to counsel in the case with the request that suggestions be made in relation to any corrections or deficiencies that might have appeared in the findings of fact or the statement of the conclusions of law. Acting upon this suggestion counsel on both sides have submitted what they conceive to be appropriate amendments or additions to, or modifications of both the findings of fact and conclusions of law. These have been examined.

1. Counsel for plaintiffs have made several requests for additional findings of fact. Such requests cover matters of law rather than of fact. As an illustration: Plaintiffs' requested finding of fact No. 1 invokes the legal principle that for additional labor and material, in the fulfillment of a contract and such as the one under consideration, the contractor would be entitled to recover on the additional cost 10% to cover overhead and 10% for profit. There can be no controversy about the correctness of this principle. It is my view that it was not applicable in this case. The contract provided specifically that no additional charge for extras should be made without the written authorization of the defendants. In this case such authorization was given in one or two instances but the charge was specifically limited to the extra cost and no more. Only in the absence of such authorization and contractual limitations the principle sought to be applied by plaintiffs could properly be invoked. The questions raised by counsel were discussed in the memorandum opinion.

Other requests made by plaintiffs were concerning matters about which there was no controversy. Under such circumstances it was unnecessary to make findings of fact with respect to them. The findings of fact heretofore proposed apparently are sufficient and therefore the requests made by plaintiffs will be denied.

2. The same thing is true with respect to declarations of law save as to declarations of law designated V and VI. Such declarations should be eliminated and in lieu thereof the following should be made:

V. The contract sued on fixes the substantive rights of the parties under the laws of the State of Missouri. While the contract was executed in Illinois, it was to be performed in the State of Missouri. The parties, therefore, contemplated that the laws of Missouri would apply. In like manner, the laws of Missouri are applicable because the forum is in Missouri.

VI. Plaintiffs are entitled to interest on the amount due them at the rate of six percent. from and after January 1, 1940.

The foregoing modifications are made for the reason that, under the law, the place of performance of a contract will determine interest rates as part of the damages in case of breach of contract. 25 C.J.S., Damages, Section 4, p. 463; Stentor Electric Mfg. Co. v. Klaxon Co., 30 F. Supp. 425; Carson v. Smith, 133 Mo. 606, 34 S.W. 855; 33 C.J. Sec. 18, p. 184; Coghlan v. South Carolina Railroad Company, 142 U.S 101; Long v. Long, 141 Mo. 352, 44 S.W. 341; Cockburn v. O'Meara, 141 F.2d 779, loc. cit. 782. In the latter case the court said:

"We conclude, as did the court below, that under the law of Texas pertaining to Conflict of Laws, the law to be applied in this case is the law of the State of Louisiana where the contract was to be wholly performed, and that the measure of damages for the breach of the contract is likewise governed by the law of that State."

The reason for the rule is expressed in 15 C.J.S., Conflict of Laws, § 11, pages 886, 887.

3. The request made by counsel for defendants should be treated in the same way. Many of the facts which counsel have requested to be incorporated in the findings are true but they are not in controversy. Counsel particularly desires the specifications of the contract to be set out. This is wholly unnecessary for the reason that there is no dispute as to the contract nor was there a difference of opinion on the construction of the contract.

In the event of an appeal, such matters will be before the Court of Appeals and may be used in argument by counsel either as a basis for the findings made or for the opposite. Moreover, by the requests made, counsel have qualified the requested facts to challenge the attention of the appellate court. If of the opinion that counsel is correct, then the Court of Appeals may consider such requests just as fully as if incorporated in the specific findings made.

With the modifications above outlined the proposed findings, together with the statement of conclusions of law will be filed and also this additional memorandum. The proposed judgment will be modified so as to include six per cent. rather than five per cent. interest as heretofore suggested.